JAMES M. PAINE and another *vs.* CHARLES A. SMITH and another.

July 1, 1885.

**Trial—Burden of Proof.**—*Held,* that upon the pleadings in this case the plaintiff had the affirmative of the issue.

**Same—Right to Open and Close—Harmless Error.**—If a court, under a mistake as to which party has the burden of proof, so directs the order of trial as to deprive the party having the affirmative of the issue of the privilege of opening and closing, this court will not reverse unless there appears probable ground for believing that the party was injured. If the court under such a mistake gives the appellant the advantage of opening and closing, he cannot complain, the error not being prejudicial to him.

**Sale—Transfer of Notes and Mortgage in Payment—Indorsement of Notes—Custom—Evidence.**—Plaintiffs sold defendants a bill of lumber, to be paid for in promissory notes, secured by mortgage against a third party, which defendants agreed to transfer and plaintiffs to accept

in payment of the lumber. Nothing was said about defendants "indorsing" the notes. *Held*, that this neither included nor implied an obligation to "indorse;" that any assignment or transfer that would convey good title would fulfil the contract on part of the defendants; *also*, that evidence was inadmissible to prove a general custom, in cases of the transfer or sale of negotiable paper, to "indorse," although not expressed in the terms of the contract.

**Contract—Mistake as to Legal Effect.**—If the minds of the parties meet upon the *terms* of their agreement, there is a binding contract, although one of them may have been mistaken as to their legal effect.

Appeal by plaintiffs from an order of the district court for Hennepin county, *Koon*, J., presiding, refusing a new trial after verdict for defendants.

*E. M. Wilson* and *John R. Van Derlip*, for appellants.

*C. K. Davis* and *Jackson & Pond*, for respondents.

Mitchell, J.   This action was brought to recover a balance due for lumber sold and delivered by plaintiffs to defendants.   The answer admits the purchase and value of the lumber, but alleges a special contract by which the plaintiffs were to accept in payment three promissory notes, secured by mortgage, executed by one Williams and held by defendants, and that in accordance with such agreement they had duly assigned the notes and mortgage and delivered them to plaintiffs, who refused to accept them.   The reply denies that plaintiffs agreed to receive the notes in payment, unless defendants should indorse them; that they indorsed them "without recourse," for which reason plaintiffs refused to accept them.   This denial, being in the nature of a negative pregnant, we construe as an admission that plaintiffs did agree to accept the notes in payment "if indorsed."

Upon the cause being called for trial, the plaintiffs asked a ruling from the court that defendants had the affirmative of the issue, and therefore "should make the first proof."   This the court refused, whereupon the plaintiffs, after excepting, proceeded to open the case and introduce their evidence.   Gen. St. 1878, c. 66, § 227, provides that "*unless the court, for special reasons, otherwise directs,*" the plaintiff shall open the case and produce his evidence, and shall conclude the argument to the jury.   Whether this at all modifies the old rule,

that the party who had the affirmative of the issue is entitled to open and close, we need not here inquire further than to say that it evidently leaves the order of trial, to some extent, to the discretion of the court. Undoubtedly the natural and regular order is for the party having the affirmative to open and close. But even if the court directed the order of trial in this case upon a mistaken view as to which party had the affirmative, the plaintiffs certainly were not prejudiced by the action of the court, for it gave them the opening and closing of the evidence, and the closing argument to the jury. Had they been erroneously deprived of these advantages, a different question would be involved. But even in such a case we think the better rule to be that this court would not interfere unless there was an abuse of discretion to the probable injury of the party complaining, or, otherwise expressed, unless there appears ground for believing that he was injured thereby. *Marshall* v. *Am. Exp. Co.*, 7 Wis. 1; *Central Bank* v. *St. John*, 17 Wis. 157; *Second Ward Bank* v. *Shakman*, 30 Wis. 333.

We are aware that in New York a stricter rule obtains, although we believe there is no statute on the subject in that state. But in this case we think the affirmative of the issue was, in fact, on plaintiffs. The burden of proof is on him who would be defeated if no evidence were offered. By the pleadings it stood admitted that under the contract this lumber was to be paid in these notes. Plaintiffs had sued for money. They were not entitled to this unless defendants had refused to give the notes. An agreement to pay in the notes of a third party, presumptively, at least, neither includes nor implies an agreement to indorse them. All that it implies is that they shall be transferred by some mode of assignment that would pass the title.

Taking the allegations and admissions of the pleadings all together, the issue stood precisely as if the complaint had alleged the agreement to pay in notes, and a refusal to do so, whereby plaintiffs became entitled to the money. Hence we think the burden was upon plaintiffs to prove an agreement to indorse, and not upon defendants that they did not agree to do so.

2. From the evidence it appears that in the preliminary negotiations between the parties some conversation occurred which might,

perhaps, tend to indicate that these notes were not to be taken in payment at all, but that plaintiffs were simply to extend to defendants a credit until the maturity of the notes, and in the mean time hold them merely as collateral. But this question was not at issue under the pleadings. As we have construed them, it was admitted that the notes were to be taken in payment, the only matter in issue being whether defendants were to indorse them. On this question there was absolutely no conflict of evidence. Both parties agree that not a word was said about indorsing notes or guarantying payment of them.

Upon the pleadings and evidence, therefore, the case stood thus: The plaintiffs sold to defendants a bill of lumber, in payment of which plaintiffs were to accept of defendants certain promissory notes against a third party, and nothing whatever was said about defendants indorsing them. Under this state of the evidence plaintiffs introduced as witnesses certain bank directors and cashiers, and propounded to them a series of questions in reference to the general custom and understanding in regard to indorsement in case of agreements for the transfer of negotiable paper. Without here taking the time to give the questions in full, and assuming that a proper foundation had otherwise been laid, it is sufficient to say that the purpose of them was not to explain any ambiguous or technical terms, or to prove the custom of any particular trade or business, but to prove generally that where negotiable paper against a third person was sold or transferred by the holder, it was the custom for him to indorse it, and that where there was an agreement by one party to transfer, and by another to accept, such paper, nothing at all being said about "indorsing," that it would be the understanding that it should be indorsed.

The statement of such a proposition is its best refutation. A contract to indorse and a contract to assign are entirely different. "Indorsing," in its technical sense, in which we have been using it, means to incur the liability of one who warrants payment of the paper, provided it is duly presented at maturity to the maker, not paid by him, and such fact is duly notified to the indorser. An "indorsement" of a bill or note is not merely a transfer of the title, but a fresh and substantive contract, by which the indorser becomes a

party to the bill or note, and liable for its payment on certain conditions. An "assignment" means a transfer of the title. It neither includes nor implies becoming in any way a party to the paper, or responsible for the insolvency or default of the maker. Of course, an assignor, whether by indorsement, "without recourse," or by some other form, by the very act of transferring it, engages that the instrument is what it purports to be,—the valid obligation of those whose names are upon it,—and that his title to it is good. A contract to sell or exchange personal property, or things in action, means (and that is all that it means) that the owner is to transfer the property to the other party. Any conveyance that is effectual to transfer good title fulfils the contract. Such a contract does not imply (and the law does not) any warranty of the quality or value of the property. Here the parties agreed to exchange lumber for promissory notes secured by mortgage. The defendants were to give, and the plaintiffs were to take, the notes in payment of the lumber. Not a word was said about defendants indorsing them, and certainly the terms of the agreement, on their face, implied no such thing. Yet we are asked to build up and establish an implied agreement to do so wholly from custom. The proposition is not to explain the terms used by the parties, or to annex a mere incident to the contract not inconsistent with what was expressed, but to make an entirely new contract by imposing on the party who has entered into one contract another and different obligation. Usage may be admissible to explain what is doubtful, but never to contradict what is plain. When it is sought to incorporate a custom into a contract expressed in language neither technical nor ambiguous, and therefore needing no aid in its construction, it amounts to establishing the principle that a custom may add to, vary, or contradict the well-expressed intention of the parties.

Without entering into any discussion or citation of authorities, we may say that it is too broad a statement to assert without qualification that the modern drift of judicial opinion is in favor of greater latitude in the introduction of proof of usage or custom to explain or construe contracts. In a commercial community many words or phrases acquire a technical meaning well understood by those in a particular trade or business. Certain business customs and usages

also become well established and understood by business men, who, in making their contracts, assume them, and take them for granted, and contract with reference to them, without taking time to incorporate them into the expressed terms of their bargains. Hence, from the necessities of the case arising from such habits, courts are no doubt inclined (and properly so) to greater latitude than formerly in admitting evidence of usage to explain the expressed terms of a contract, and to add to it mere incidents not expressed, but not inconsistent with what is expressed. But courts are still uniformly opposed to allowing evidence of custom to vary or contradict the plain expressed terms of a contract, or to imply from these terms an obligation different from what the law would imply, or, as was in effect sought to be done in this case, to imply an obligation in the absence of any contract on the subject. Any other rule would introduce a dangerous element of uncertainty into contracts. There is no need of any such customs; for if parties wish to add an obligation which the law would not imply, or exclude one which it would imply, it is easy for them to so express themselves. We think the evidence was properly excluded. Indeed, we think it would not be much of a stretch to assume that courts know enough about business to take judicial notice that, whatever may be the custom of bankers in discounting paper, there is not in the general community, as a matter of fact, any such custom as was offered to be proved. When a man sells or trades off a promissory note, the question whether he is or is not to indorse it depends on the terms of his bargain, and not on custom.

3. There being no misunderstanding between the parties as to the *terms* of their contract, it was wholly immaterial that there was a misunderstanding as to the legal effect of them. If the minds of the parties met upon the terms of their agreement, it was sufficient, and there was a binding contract, although one of the parties made a mistake of law as to its legal effect. This proposition is elementary and disposes of the only other assignment of error in excluding evidence.

Inasmuch as, under the views we have expressed, there was, on the evidence, no question of fact to be submitted to the jury, it be-

comes wholly unnecessary to consider the exceptions to the charge of the court. The court would have been justified in directing a verdict for defendants.

Order affirmed.