WM. FOWLDS *vs.* A. L. EVANS *et al.*

Submitted on briefs Dec. 15, 1892. Decided April 5, 1893.

**Contract, Performance by the Time Agreed upon, Excused.**

The failure of a party to perform within the time limited in a contract will not prevent a recovery upon the performance after the time specified if he is allowed to go on after the time limited has expired without any expression of disapproval from the other party, for whose benefit the stipulation has been made. The latter is bound to express dissatisfaction at the delay, and if he intends to take advantage of it must act with promptness at the time and not allow the party in default to expend his money in completing the work.

**Agency Inferred from Conduct and Circumstances.**

As a general rule, the fact of agency cannot be established by proof of the acts of a pretended agent, in the absence of evidence tending to show the principal's knowledge of such acts or assent to them; yet when the acts are of such a character and so continued as to justify a reasonable inference that the principal had knowledge of them, and would not have permitted the same if unauthorized, the acts themselves are competent evidence of agency.

Appeal by plaintiff, William Fowlds, from an order of the District Court of Pope County, *Searle,* J., made August 4, 1892, denying his motion for a new trial.

The defendant the Duluth, Huron & Denver Railroad Company, a corporation, entered into a contract with the defendant A. L. Evans of Chicago, Illinois, to construct a part of its line of railway between Sauk Center, in Stearns county, and Appleton, in the county of Swift. On July 16, 1887, Evans sublet a portion of the work to plaintiff, who agreed to commence said work in ten days from that date, and

to prosecute the same with such force and means as would, in the opinion of the chief or assistant engineer, insure the completion of the same on or before the 15th day of September, A. D. 1887; to be subject at all times during the progress of the work to the directions of the chief or assistant engineer, or said Evans, as to the mode of doing the same, and to conform to the rules and general specifications attached and made a part of the agreement. Plaintiff also agreed not to assign or transfer the contract, or relet any of the work without the written assent of Evans, and to constantly superintend the work in person. Plaintiff also agreed to conform in all respects to the directions and instructions of the chief or assistant engineer, or Evans, relative to the work, and to progress with the same at such time or times, in such manner, and at such particular points on the line of the work as the chief or assistant engineer should direct. The chief engineer was made an umpire to decide all matters arising or growing out of the contract. It was further mutually agreed between the parties that if plaintiff should, in the opinion of Evans, fail or refuse to comply with any of the stipulations contained in the contract, Evans should have a right to cancel the contract and declare the same void; in which event plaintiff was to have no claim whatever on Evans for damages or compensation or for the percentage retained either for material or work, but Evans was to have a right to take possession of, and hold said material and work absolutely, and be absolved as entirely and completely from the contract as if the same had never been made. It was further mutually agreed and understood, that if the plaintiff should at any time neglect or refuse to progress with the work as fast as in the opinion of the engineer or Evans (communicated in writing to plaintiff) might be necessary for the completion by the time specified, then Evans might declare the contract abandoned, and the amount that may have been retained out of the monthly estimates forfeited. Evans retained the right to stop any or all of the work, or to diminish the force employed. It was further agreed that the decision of the chief engineer on any point or matter touching the agreement should be final and conclusive between the parties, and whenever the work, in the opinion of the chief engineer, should be finished in every respect, and per-

formed agreeably to the specifications, and said chief engineer shall have furnished to Evans a certificate of the facts under his hand, together with his estimate of the quantity of the various kinds of work done, then Evans should pay to Fowlds, within fifteen days thereafter, all sums which might then be due under the contract, agreeably to the estimate, viz. fourteen cents per cubic yard, ninety per cent to be paid in cash on or about the 15th day of every month, for all work done the previous month; the balance with the final payment. The times therein specified were declared to be of the essence of the contract.

Under this contract, plaintiff between July 16, and November 23, 1887, performed work and labor on said line. He excavated and moved 233,043 cubic yards of earth, and received on account of said work, the sum of $9,730.50. On July 28, 1887, plaintiff entered into another contract with said Evans to build and construct another portion of the lien. This contract contained terms and stipulations like the first. Under this contract 143,583 cubic yards of earth were moved. Plaintiff made an affidavit and claim of lien for the work done under each of the contracts, and they were duly filed in the office of the Secretary of State. There remained unpaid about $54,000. Other lien claimants, made defendants in this action, did work and filed liens for about $96,000 more.

This action was brought August 15, 1889, to foreclose the liens under 1878 G. S. ch. 90. The new lien law of 1889, ch. 200, had not then gone into effect. Evans and the Railroad Company and all lien claimants were made defendants. The action was tried at St. Cloud on October 16, 1891. Findings were filed on April 12, 1892, and judgment ordered for defendants, on the grounds considered in the opinion of this court. Plaintiff moved for a new trial, and being denied, appealed.

*Hunt & Morrill*, for appellant.

On all the material points of this case the trial court found in favor of the plaintiff; but on technical grounds granted judgment for defendant. The lower court found that time was of the essence of the contract, and that to recover, plaintiff must show completion of the

work under the first contract by September 15, 1887. The work was completed November 23, 1887, and the plaintiff claims under the acts of defendant Evans, a waiver of the element of time, in case it can be read into the contract. The lower court also found that there was no proof that the engineers' certificates and estimates were delivered to Evans; and that the admitted delivery of the bonds to Evans by the company, paying him for the work, did not estop the company from claiming that Evans did not receive the certificates and final estimates required by the contract with plaintiff; and that J. S. Wilson was not shown to be agent of Evans. It is admitted that the certificates and estimates were delivered by the chief engineer to Wilson for Evans. No definite date was fixed within which the work was to be completed; plaintiff only agreed to prosecute the work with such force and means as would in the opinion of said chief or assistant engineer, insure its completion on or near the 15th day of September, 1887. The work was to be completed, as stated in the contract, "to the satisfaction and acceptance of the chief or assistant engineer of the Duluth, Huron & Denver Railroad Company;" and the engineer of said company has testified that it was so completed. The chief engineer who was sole umpire under this contract, permitted plaintiff to proceed with the work under the contract, after September 15, and he made monthly estimates and final estimates of the work; and after the work was completed he certified that "it was finished according to contract." These acts are, in contemplation of law, a waiver of any claim for damages against the plaintiff, for not completing the work by the time stipulated. The defendants, Evans and the railroad company, were estopped from claiming damages therefor. They did not see fit to make any allegations in their answer as to such damages. As a matter of pleading, it was defendant's duty to allege the fact that the contract was not completed in time, and to allege and prove damages, if any there were, by reason of plaintiff's failure to complete in time. *Leeds* v. *Little*, 42 Minn. 414; *Cullen* v. *Sears*, 112 Mass. 299; *Heckmann* v. *Pinkney*, 81 N. Y. 211; *Lautenschlager* v. *Hunter*, 22 Minn. 267; *St. Paul & N. P. Ry. Co.* v. *Bradbury*, 42 Minn. 222; *Kihlberg* v. *United States*, 97 U. S. 398; *Sweet* v. *Morrison*, 116 N. Y. 19; *Grant* v. *Savannah, G. & N.*

*A. R. Co.,* 51 Ga. 348; *Wheeler* v. *Scofield,* 67 N. Y. 311; *Galla-gher* v. *Nichols,* 60 N. Y. 438; *Sinclair* v. *Tallmadge,* 35 Barb. 602; *Jewell* v. *Schroeppel,* 4 Cowen, 464; *Phillips Const. Co.* v. *Seymour,* 91 U. S. 646; *Merrill* v. *Ithaca & O. R. Co.,* 16 Wend. 586; Atlanta *& R. A. L. R. Co.* v. *Mangham,* 49 Ga. 266; *Lauman* v. *Young,* 31 Pa. St. 306.

There is no dispute in regard to the fact that Roberts, the chief engineer of defendant company, did furnish the certificates and estimates, both monthly and final, to J. S. Wilson, supposing that he was delivering them to the agent of Evans. The circumstances proved, show that Evans knew that Wilson was acting as his agent, and did not dissent, but availed himself of Wilson's acts in some instances. This was sufficient proof of agency. There is no evidence that Evans disavowed the acts of Wilson as his agent. On the contrary, the fair inference is that he must in all matters have approved and recognized his agency. *Humphrey* v. *Havens,* 12 Minn. 298, (Gil. 196;) *Wilcox* v. *Chicago, M. & St. P. Ry. Co.,* 24 Minn. 269; *Neibles* v. *Minneapolis & St. L. Ry. Co.,* 37 Minn. 151; *Tice* v. *Russell,* 43 Minn. 66.

Fowlds' second contract was not completed on account of the failure of Evans to make payments as agreed upon. The complaint in this second cause of action alleges non-performance, and sets up non-payment as excuse therefor. For the work which was actually performed under this contract, and for which estimates were furnished by Roberts to Fowlds and Evans, Fowlds asks to recover $21,-450.45. Roberts, as chief engineer and umpire under this second contract with Evans, canceled it November 12, 1887, by an indorsement in writing thereon, for repeated failure of Evans to make the payments at the times specified therein. These facts being shown without contradiction, Fowlds is entitled to recover, under his second contract, $21,450.45 due him for work done under it. *Dodge* v. *Royers,* 9 Minn. 223, (Gil. 209;) *Siebert* v. *Leonard,* 17 Minn. 433, (Gil. 410;) *Grand Rapids & B. C. R. Co.* v. *Van Dusen,* 29 Mich. 431.

Nothing is said about subletting in these contracts. In the nature of things, contracts of this kind cannot be completed in the time provided unless such work is sublet; but the only restriction was, that

plaintiff should not *re-let* or assign these contracts without written consent.

*Davenport & Thian*, for respondent.

Whatever Wilson's pretensions and acts were, they can have no effect until it is first shown that the alleged principal, Evans, had knowledge of the acts. There is no evidence from which such knowledge can be inferred. *Tice* v. *Russell*, 43 Minn. 66; *Humphrey* v. *Havens*, 12 Minn. 298 (Gil. 196.) The case of *Wilcox* v. *Chicago, M. & St. P. Ry. Co.*, 24 Minn. 269, and *Neibles* v. *Minneapolis & St. L. Ry. Co.*, 37 Minn. 151, do not militate against this position. The evidence nowhere shows that any monthly estimate was ever delivered to Evans, or that any final estimates or certificates required by the contracts, were ever delivered to him or refused by the engineer. It is not pleaded that Evans ever waived or excused the production of such estimates or certificates. The railroad company has a right to all the defenses that Evans would have. The contract between the railroad company and Evans, so far as it appears in evidence, required certain certificates that five mile sections were completed before certain bonds of the company could be turned over to Evans. With this, plaintiff had nothing to do. These certificates were not the ones called for by plaintiff's contracts. Fifteen such certificates could be made, and yet they would not show that plaintiff had completed any portion of his work. From the evidence in this case, even such certificates are not proved to have been delivered. An old answer was received in evidence. This was objected to as incompetent and immaterial. There was nothing to show that it had been served or filed. This answer was sworn to by one Canfield, who came into the company's service after all the transactions complained of had occurred, and after those of the directory who knew the facts had become hostile. *Vogel* v. *Osborne & Co.*, 32 Minn. 167. The case of *Rich* v. *City of Minneapolis*, 40 Minn. 82, does not militate against respondent's contention. Chitty, Cont. 571, (5th Am. Ed.;) *Morgan* v. *Birnie*, 9 Bing. 672; *Michaelis* v. *Wolf*, 136 Ill. 68; *Roy* v. *Boteler*, 40 Mo. App. 213; *Barney* v. *Giles*, 120 Ill. 154; *Downey* v. *O'Donnell*, 86 Ill. 49; *Kirtland* v. *Moore*, 40 N. J. Eq. 106; *Oak-*

*wood Retreat Ass'n* v. *Rathborne*, 65 Wis. 177; *Hudson* v. *McCartney*, 33 Wis. 331; *President D. & H. Canal Co.* v. *Pennsylvania Coal Co.*, 50 N. Y. 250; *Barton* v. *Herman*, 11 Abb. Pr. (N. S.) 378; *Schencke* v. *Rowell*, 3 Abb. N. C. 43; *Sweeney* v. *United States*, 109 U. S. 618; *Johnson* v. *Howard*, 20 Minn. 370, (Gil. 322;) *Gjerness* v. *Mathews*, 27 Minn. 320.

Reletting a portion of the work called for by the contract would, in the opinion of most men, be a subletting. But this is an unimportant question in the case, as the judgment can be sustained without regard to it.

COLLINS, J. This was an action to foreclose a lien against the line of railway owned by defendant company, under the provisions of 1878 G. S. ch. 90. Defendant Evans had contracted with the company to construct about ninety miles of road, and plaintiff was his subcontractor under two contracts; one dated the 16th, the other the 28th, day of July, 1887. Other subcontractors were made defendants. On findings of fact the court below ordered judgment in favor of defendant company, and this appeal is from a judgment entered upon an order refusing a new trial. Thirty-four assignments of error are presented by counsel for appellant, but in their brief and on the oral argument they discussed what they termed the "three main points," all having reference to the first contract, and plaintiff's right to a lien by virtue of work done under it. There was not much dispute over the facts. It appears that Evans was to be paid in the bonds of defendant company at the rate of $7,000 per mile on the completion of each consecutive five miles of the line. These bonds were on deposit in New York city, and were to be delivered to Evans only upon the certificate of the president and chief engineer of the company that he had completed the number of consecutive miles before mentioned. The contracts for different portions of the line made between Evans and plaintiff were alike in their terms. In each was a stipulation that plaintiff should commence his work within ten days from date, and should prosecute the same with such force and means as would, in the opinion of the chief or assistant engineer, insure the completion thereof by September 15th following. At all

times he was to be under the direction of the engineers as to the mode of doing the work, and if at any time he neglected or refused to proceed with the same as fast as, in the opinion of the engineer or of Evans, (to be communicated in writing,) was necessary to complete the work by September 15th, Evans was authorized to declare the contract abandoned, and to retain all amounts earned thereon. If plaintiff failed or neglected to comply with all the provisions of the contracts, Evans was empowered to cancel and declare them void, the plaintiff to have no claim for work already done, or for damages of any kind.   Evans also reserved the right to stop any or all of the work, or to reduce the force employed, at will.   It was also agreed that the chief engineer should be the umpire to decide all disputes between the parties arising out of the contracts; his decision to be final.   Plaintiff was to be paid monthly, and only upon the certificates of the chief engineer, furnished to Evans, that the work therein certified to had been completely finished in every respect, and performed agreeably to the various provisions of the contracts.   It was also necessary that an estimate of the quantity of the various kinds of work done by the plaintiff should be made by the engineer, and accompany the certificates.   There was a stipulation that ten per centum of each estimate should be retained by Evans until the work was entirely finished.   Following a provision that plaintiff should be paid only for actual work done or materials furnished were these words: "The times herein specified are of the essence of the contract," but in no other part of the contracts was time referred to as of their essence.   The court below found as a fact that between the date of the first contract and the 23d of November, 1887, plaintiff performed work and labor in carrying out the same of a certain value.   The testimony clearly establishes his claim that between those dates he performed the conditions of the first contract to the satisfaction of the chief engineer and Caldwell, the general manager of the road, who seems to have been upon the ground all of the time, and who paid to plaintiff something over $9,000 on account of his work, or about one sixth of its alleged value. Nothing was paid by Evans.   The testimony also shows that the plaintiff performed a large amount of work under the second con-

tract, to the satisfaction of the engineer, but that he refused to proceed, because Evans failed to make payment as stipulated; that the engineer agreed that plaintiff might abandon, and that he then abandoned, further work on the second contract, leaving it uncompleted. The court found in accordance with the testimony in respect to the second contract, and also found that plaintiff's abandonment of the same was without legal excuse. It also found that time was of the essence of each contract, and that plaintiff sublet much of the work without obtaining the written consent of contractor Evans. A clause in each contract prohibited reletting. The court found also, as to both contracts, that neither the chief engineer nor the plaintiff furnished to Evans certificates or estimates as required; that he never waived or excused this failure, and that the furnishing thereof were conditions precedent to payment under each of the contracts.

It is unnecessary for us to pass on appellant's contention that time was not made of the essence of the contracts. From what we have said in reference to the language found in these instruments it would appear to be a matter of grave doubt. The engineer was empowered with very great authority in the matter of pushing or retarding the work, having almost unlimited control over the plaintiff, when and how he should work, and the number of men he should employ. We are unable to discover any provision in the written agreements whereby the plaintiff positively promised to complete the work by September 15th. He did expressly contract to prosecute it with such force and means as would, in the opinion of the engineer, insure its completion by that day; and it was also provided that if he failed or neglected to use such force and means, after being notified in writing, as would, in the opinion of either Evans or the engineer, complete it on the day named, the former could declare the contracts abandoned, plaintiff forfeiting all that was his due. With these and other provisions in reference to the power and authority of Evans and the engineer to control the work, hastening or delaying it as they chose, it would seem somewhat unreasonable to declare that the sentence found elsewhere in the contracts and before quoted should be construed as requiring the full completion of

the work on September 15th. But it is of no consequence. There were no allegations in the answer which raised the question. It was not alleged that plaintiff had failed to perform the work within the time agreed upon, or that damages had accrued by reason of the delay. The proof shows that all of the work under the contracts was done under the personal supervision and to the satisfaction of the engineer; that after the 15th of September, when plaintiff was about to abandon work on both contracts, (the first not being quite finished,) because he had not been paid, the engineer named as the umpire between the parties expressly requested plaintiff to complete the work provided for in the first contract, and agreed if he would do so that he should be formally released from further obligation under the second. The record is full of testimony tending to show that, even if time was made of the essence of these contracts, the delay was assented to by the chief engineer and by all other interested parties. The stipulations which gave to Evans and the engineer the right to give written notice if, in their opinion, the plaintiff was not proceeding fast enough with the work, and to declare the contracts abandoned and forfeited, were for Evans' benefit and protection. No notice of this or any other kind was given, and plaintiff was not only allowed, but requested, to proceed. Evans thereby waived the protection and benefit of the clause as to time, if one there was, and cannot, nor can the defendant company, now be permitted to avail themselves of it. As the plaintiff was allowed to go on after the time limited had expired, according to defendants' construction of the contracts, without any expression of disapproval from Evans, and without notice at any time that he was not progressing as rapidly as he should, the forfeiture was waived upon plain principles of estoppel. The contractor, Evans, was bound to give notice or express his dissatisfaction at the delay, and, if he intended to take advantage of it, should have acted with promptness at the time, instead of allowing and actually requiring plaintiff to expend his money in the completion of the work. *Wheeler* v. *Scofield,* 67 N. Y. 311; *Sinclair* v. *Tallmadge,* 35 Barb. 602; and *Grant* v. *Savannah, G. & N. A. R. Co.,* 51 Ga. 348,—a case on this point identical with the one at bar. A forfeiture of this kind is not

a favorite of the law, and acquiescence in acts inconsistent with a forfeiture clause will dispense with a right to claim it. *Lauman* v. *Young*, 31 Pa. St. 306.

On the testimony as presented by the record the fact that plaintiff did not complete his contracts by September 15th should not have been allowed to stand in the way of the enforcement of his lien claim.

The second main point argued by counsel for appellant relates to the findings that the estimates and certificates by the terms of each contract required to be furnished to Evans as a condition precedent to payment by him were not so furnished by either plaintiff or the chief engineer, which finding, it is insisted, was not sustained by the evidence. This point is so interwoven with the third, which bears upon certain rulings of the court made when receiving testimony, that they may well be considered together. The evidence which was received shows very clearly that Evans was only upon the ground in person two or three times. He seems to have been a resident of Chicago. The general manager, the engineers, and the attorney of the road had offices in the same building, in Sauk Center, for some months, and while plaintiff was doing his work. One Wilson came to Sauk Center, opened an office in the same building, kept a clerk, and pretended to represent the contractor, Evans. He was over the line of work with Evans, once at least, and with other persons, such as the manager and the engineers. He looked after the construction of the road to some extent. He was beyond doubt recognized as the representative of Evans by all of the functionaries of the road, and while Evans was in Sauk Center he made his headquarters at the office occupied by Wilson. There was no direct evidence that he was Evans' agent, but the circumstances all pointed that way very strongly. For instance, on one occasion, when Evans had made a trip over the line, and had reached Sauk Center, with the intention of returning to Chicago immediately, the question arose between the engineer and himself, as to who should sign certain bridging contracts, about to be entered into, in Evans' absence. The latter informed the engineer that Wilson would attend to it, and the contracts were signed for him by Wilson. To this man Wilson, and in his

office, the chief engineer delivered the monthly and final estimates and certificates on which the plaintiff was entitled to pay, in the belief, as was testified to by the engineer, that Wilson was Evans' agent and representative, to whom it was proper to make the delivery. From the conduct of all of these parties it is almost impossible to resist the conviction that Wilson was just what he pretended to be for a period of more than four months, — the agent of the principal contractor, Evans. If he was the agent, it is very evident that the plaintiff was not in default in a performance of the conditions of the contracts requiring that Evans should be furnished with estimates and certificates. But this is not all that clearly appeared in evidence. Some months after plaintiff finished his work, Conkey, the president of the road, send for Roberts, the chief engineer, to meet him in Chicago, to correct some errors which had been discovered in the final five-mile certificates, fifteen in number, already issued by him, and which must have been those delivered to Wilson for Evans. Roberts went to Chicago, met both Conkey and Evans, and the three went on to New York together, for the express purpose of rectifying the errors. There the old certificates were destroyed and fifteen new ones duly executed by Roberts and handed to Conkey, for his signature as president. Roberts, when testifying, could not state with certainty that Conkey signed, or that Evans received, these new certificates, but in the original answer in the action made by defendant company, which pleading had been superseded by an amended answer, but was introduced in evidence by plaintiff, it was alleged that certificates of completion for seventy-five miles of the road, duly signed by the president and engineer, had been issued to Evans, and by means of the same he had received the deposited bonds of the company at the rate of $7,000 per mile, in accordance with the terms of his contract. No attempt was made to explain or contradict this allegation of defendants' original answer, so it stood confessed that the president and engineer had accepted from Evans the work performed by plaintiff under his first contract, and had caused payment in full to be made to Evans. We are not obliged to hold that this evidence demanded a finding that there had been furnished to the latter the certificates provided for in plaintiff's

first contract, but we are of the opinion that the preponderance of proof was decidedly in favor of it, although the trial court found to the contrary as before stated.

But a new trial must be had, as the court erred in some of its rulings when excluding certain testimony, and again in striking out portions of that already in, which was proper and competent as tending to show that Wilson was Evans' agent. We need not refer to these erroneous rulings specifically, but will call attention to well-recognized rules of evidence in like cases, under which a part of the testimony excluded, and some, at least, of that stricken out, should have been received or retained. We have stated the general course of Wilson's conduct, and what he did at Sauk Center for a period of three or four months, while plaintiff and other subcontractors under Evans were at work on the line. That he pretended to act for Evans, and that on one occasion at least, and in a matter of fact way, Evans recognized him as his representative, is certain. That Evans paid him occasional visits, and once took him over a part of the work with him, and that he was recognized by the officers of the road and by the subcontractors as Evans' agent, was well established; and that his course of conduct must have been known by the latter seems beyond serious question. From the natural improbabilities that without authority Wilson would assume to act in the capacity that he did during nearly all of the time the work was being done, and from the fact that such conduct would naturally come to be known by the assumed principal, the fact of agency may be presumed. *Neibles* v. *Minneapolis & St. L. Ry. Co.*, 37 Minn. 151, (33 N. W. Rep. 332.) It was well said in *Reynolds* v. *Collins*, 78 Ala. 94, that "as a general rule the fact of agency cannot be established by proof of the acts of the professed agent in the absence of evidence tending to show the principal's knowledge of such acts, or assent to them; yet when the acts are of such a character and so continued as to justify a reasonable inference that the principal had knowledge of them, and would not have permitted them if unauthorized, the acts themselves are competent evidence of agency." In view of these rules it is obvious that the court erred in many of its rulings, particularly when it struck out the testimony of plaintiff as to Wilson's

trips over the line of work, giving instructions to the subcontractors in respect to the manner of the performance of their contracts, and directing them to increase their forces, as Evans' superintendent of construction. These acts and the surrounding circumstances had a strong tendency to establish knowledge in Evans of Wilson's pretended agency, and, even if it was nothing but pretense, to conclude the former from asserting to the contrary. With Wilson's acts in connection with the work, Evans' association with him when in the state, and the relation between these two persons and the officers of the road while the work was progressing, and what transpired afterwards, one would have to be quite skeptical in order to believe that Wilson was not what he assumed to be.

Very little discussion is needed in respect to the second cause of action, and as to what occurred on the trial concerning it, or the findings of the court. It was not within the province of the chief engineer to release plaintiff from a performance of his agreement to do the work covered by the second contract. If Evans was in default, the plaintiff could safely refuse to proceed, but the engineer was nowhere given the authority to absolve the plaintiff from his stipulation to perform, and hence his attempt so to do was a nullity.

It stands admitted on the testimony that plaintiff sublet much of the work stipulated for in this second contract, contrary to an express provision therein. Under proper allegations in its answer the defendant company could take advantage of a breach of this condition, but with such allegations the defense might not prove of very great value, for the law before referred to as applicable to defendants' claim that plaintiff ought not to recover on his first cause of action because he failed to complete his contract in time would be pertinent and applicable here, if warranted by the facts.

Judgment reversed.

(Opinion published 54 N. W. Rep. 743.)