HENRY W. MERCHANT *et al. vs.* ROBERT R. HOWELL *et al.*

Submitted on briefs April 27, 1893. Decided May 19, 1893.

**Ambiguous Contract Construed from Extrinsic Circumstances.**

Defendants ordered from plaintiffs "600 2-inch boiler-flue ferrules; 1,500 2½-inch; and 1,200 3-inch. This is outside diameter." *Held*, that it was competent to show, for the purpose of explaining the meaning of the order, that, in the trade in which both parties were engaged, boiler-flue ferrules are standard articles of common use, and that it was the general custom to designate them by the size of the flues on which they were to be used; also that boiler flues are always manufactured in certain regular and standard sizes of exact outside diameters, and that, if the dimensions named in the order were to be applied to the ferrules, and not to the flues, the ferrules could not be used as "boiler-flue ferrules."

Appeal by plaintiffs, Henry W. Merchant and Clarke Merchant, from an order of the District Court of Hennepin County, *Frederick Hooker, J.*, made March 11, 1892, granting a new trial on motion of the defendants, Robert R. Howell and David R. Howell.

The plaintiffs deal in metals, brass and copper goods at Philadelphia, Pa. Defendants deal in supplies for engines, boilers and machinery at Minneapolis. On December 5, 1889, defendants wrote plaintiffs as follows:

"Please enter our order for 600—2 inch boiler flue ferrules; 1,500— 2½ inch and 1,200—3 inch. This is outside diameter. All to be 18 stub guage and ¾ inch long, to be shipped to us by freight June 1st next."

Plaintiffs sent seamless drawn copper ferrules of these outside diameters. Defendants refused the goods, claiming the ferrules were ordered to repair and go over boiler flues of the outside diameters specified. This action was to recover the purchase price and was tried November 17, 1891. The plaintiffs claimed that the order meant the outside diameter of the ferrules, not the outside diameter of the boiler flues; and that the mistake was defendants'. On the other hand, the defendants claimed the diameters mentioned in the order were the outside diameters of the boiler flues, that these ferrules were to repair. Defendants proved that boiler flues are manufactured in regular and standard sizes of

1¾, 2, 2¼, 2½, 2¾, 3, 3½ and 4 inches outside diameter, with no inter-mediate sizes, and that the copper ferrule for repairing must be of the same diameter inside, and that it was so understood in the trade. The plaintiffs proved that an order for copper or brass tubes of a certain diameter meant in the trade, outside diameter, and that the rule prevailed, although the tube should be cut into short pieces forming ferrules merely. Defendants also claimed damages on account of delay in shipment of the ferrules. The plaintiffs contended that the delay in shipment was waived. At the close of the evidence, the court directed the jury to return a verdict for plaintiffs, for the price of the goods and interest. De-fendants excepted and moved for a new trial. The court granted it, being convinced, on reflection, that the outside diameters men-tioned in defendants' order were meant to be that of the boiler flues, not of the ferrules, and that the case should have been sub-mitted to the jury on the question whether or not there .was a cus-tom of the trade in regard to these diameter measurements. Plain-tiffs appeal.

*Geo. F. Edwards,* for appellants.

No technical, trade, or art words, phrases or expressions are used in the letters which constitute the contract for the ferrules; none ambiguous, none of doubtful, uncertain or varying sense or mean-ing. The contract is clear, plain and complete. It leaves nothing indeterminate, nothing to be implied or presumed, and therefore the force and effect of the evidence of custom would have been to vary, to contradict the plainly expressed terms of the contract. The true office of usage or custom is to interpret the otherwise in-determinate intentions of the parties, and to ascertain the nature and extent of their contract, arising not from express stipulations, but from mere implications and presumptions;—to ascertain the true meaning of a particular word, or particular words, in a given instrument, where it or they have various senses, some common, some qualified and some technical. *The Schooner Reeside,* 2 Sumn. 569; *Swett* v. *Shumway,* 102 Mass. 365; *Park* v. *Piedmont & A. Life Ins. Co.,* 48 Ga. 601; *Brown* v. *Brown,* 8 Met. 573; *Manson* v. *Grand Lodge,* 30 Minn. 509; *Barnard* v. *Kellogg,* 10 Wall. 383; *Simmons* v. *Law,* 3 Keyes, 217; *Beyerstedt* v. *Winona Mill Co.,* 49

Minn. 1; *Thompson* v. *Libby*, 34 Minn. 374; *McCormick H. & M. Co.* v. *Thompson*, 46 Minn. 15.

The use for which the ferrules were designed is immaterial, as plaintiffs made and furnished the articles of the specific measures, kinds, qualities, etc., ordered. *Goulds* v. *Brophy*, 42 Minn. 109. Plaintiffs were not dealers in boilers or boiler flues, but it is urged that because they furnish ferrules for boiler flues, they must have known there were no standard flues these ferrules would fit.

The terms of the written contract were plain and explicit, its meaning was a question of law, and the evidence of custom, immaterial. *Worcester Medical Institution* v. *Harding*, 11 Cush. 285; *Short* v. *Woodward*, 13 Gray, 86; *Nash* v. *Drisco*, 51 Me. 417; *Woodman* v. *Chesley*, 39 Me. 45; *Streeter* v. *Streeter*, 43 Ill. 155; *Lamb* v. *Henderson*, 63 Mich. 302; *Ledyard* v. *Hibbard*, 48 Mich. 421; *Adams* v. *Pittsburg Ins. Co.*, 76 Pa. St. 411.

*Hart & Brewer*, for respondents.

The controversy is whether the intention of the parties is to be arrived at from the correspondence constituting the contract alone, or can extraneous evidence of the surrounding circumstances be considered. It is a rule of interpretation that the intention of the parties to a contract is to be ascertained by applying its terms to the subject matter. The admission of parol testimony for such purpose does not infringe upon the rule which makes a written instrument the proper and only evidence of the agreement contained in it. *Sweet* v. *Shumway*, 102 Mass. 365; *Bradley* v. *Washington, A. & G. S. P. Co.*, 13 Pet. 89; *Merriam* v. *United States*, 107 U. S. 437; *Reed* v. *Insurance Company*, 95 U. S. 23; *United States* v. *Peck*, 102 U. S. 64; *White's Bank* v. *Myles*, 73 N. Y. 335; *Blossom* v. *Griffin*, 13 N. Y. 569; *Miller* v. *Stevens*, 100 Mass. 518; *Macdonald* v. *Longbottom*, 1 El. & El. 977.

It is obvious from the correspondence that what the parties were contracting about was boiler flue ferrules. The evidence which was offered by the defendants, and received by the court, conclusively showed that boiler flues were manufactured in certain regular and standard sizes of the exact outside diameter mentioned in the several letters, and that the articles to be furnished

would not be boiler flue ferrules, and could not be used as such, if the dimensions specified were to be applied to the ferrules and not to the flues.

If the foregoing contention as to the proper construction of the contract, as applied to its subject matter, is correct, it disposes of the plaintiff's claim. If it is not correct, it leaves for consideration the question of usage or custom and the evidence applicable thereto. It is competent to show that, by the general usage of a particular trade or business, particular words or phrases have a generally understood and accepted meaning. Within this rule the defendants introduced testimony tending to show that there was a general usage or custom in this particular business, by which all attachments or fixtures pertaining to boiler flues, such as expanders, flue cleaners and ferrules were uniformly designated by the size of the flues in connection with which they were to be used.

COLLINS, J. The real controversy between the parties to this action is whether the defendants' written order for boiler-flue ferrules, which plaintiffs undertook to fill, was, and should have been so understood, for ferrules of the dimensions specified, outside diameter measurements, the gauge thickness being about 1-18 of an inch, or for ferrules which would fit upon and over boiler flues of these diameter measurements, outside. The defendants contend that their order for "600 2-inch boiler-flue ferrules; 1,500 2½-inch; and 1,200 3-inch. This is outside diameter,"—was plain and unambiguous, and that the specified dimensions clearly referred to the flues, not to the ferrules; while plaintiffs insist with equal positiveness and confidence that the order plainly stated what the diameters of the ferrules, outside measurements, should be, not the diameters of the flues for which they were intended. And counsel upon either side have demonstrated the correctness of their respective positions—to their own satisfaction.

The court below conducted the trial upon the theory that the language used in the order was of doubtful construction, and, plaintiffs objecting, allowed defendants to show by competent witnesses which interpretation would have been put upon it, and how it would have been construed, generally, by persons engaged in the trade.

Testimony upon the same point was produced by plaintiffs, and, it seems almost needless to remark, the witnesses differed as to how the language of the order should have been understood and construed by those who dealt in such articles.   The court also allowed defendants to show, plaintiffs objecting, that all boiler flues are made in standard sizes, and that the ferrules furnished in accordance with plaintiffs' construction would not fit upon any of these standard sizes.   In fact, plaintiffs seem to have admitted this, for in all of their communications with defendants since the latter advised them of the alleged mistake they have spoken of the ferrules as worthless, except as scrap metal.   After receiving the testimony above mentioned, and by which a very grave doubt had been raised as to how the order should have been construed, if none had before existed, the court, upon its motion, directed a verdict for plaintiffs for the contract price of the goods, and such a verdict was returned. Later the court granted the defendants' motion for a new trial, on the ground that it ought not to have taken the case from the jury, and the present appeal is from the order granting a new trial.

We do not agree with the claim made by plaintiffs' counsel that the language used in the order was so plain and clear as to warrant but one construction of it, and that the one which his clients placed upon it.   If, then, there was a doubt whether on the face of the order it should have been interpreted by them, as it evidently was, when filled, they have no cause to complain of the rulings of the court respecting the admissibility of testimony tending to explain the language, or of the order granting a new trial.   The subject-matter of the contract was boiler-flue ferrules, not ferrules.   It was shown that boiler-flue ferrules were articles in common use, and that plaintiffs had been engaged in selling them to the trade for many years.   It was also shown that boiler flues were manufactured in standard sizes only, such sizes being fixed in inches and fractions thereof, outside measurement.   No flues are made between 1¾-inch and 2-inch outside diameter, and knowledge of this fact, which stands undisputed, must be attributed to plaintiffs; so that a ferrule 1-18 of an inch gauge, with an outside diameter of 2 inches, could not be used upon a 1¾-inch or a 2-inch flue, being too large for the one, and too small for the other.   The same objections were made to the 2½-inch and 3-inch ferrules furnished by

plaintiffs, the fact being that no boiler flues were manufactured on which any of these ferrules would fit.

With this condition of affairs, of long standing when defendants gave their order for boiler-flue ferrules,—an article of common use, —evidence of custom and usage, so called, and the understanding of those engaged in this particular line of trade, was admissible to show what was intended, and what should have been understood, by plaintiffs. It is a rule of interpretation that the intention of the parties to a contract is to be ascertained by applying its terms to the subject-matter. The subject or object to which it is to be applied may be ascertained by extrinsic evidence, if it can be done without a departure from the rational meaning of the words actually used. If the meaning is involved in uncertainty, the intention may be ascertained by such testimony, and, when so ascertained, will be taken as the meaning of the parties, if such meaning can be distinctly derived from a fair and rational interpretation of the language employed. It was well said in *Paine* v. *Smith*, 33 Minn. 495, (24 N. W. Rep. 305,) that in a commercial community many words or phrases acquire a technical meaning, well understood by those in a particular trade or business. Certain business customs and usages also become well established and understood by business men, who, in making their contracts, assume them for granted, and contract with reference to them, without taking time to incorporate them into the express terms of their bargains. On this branch of the case the court should have submitted it to the jury.

Under the pleadings and the testimony, the defendants were not entitled to recover upon their counterclaim for damages. As late as August 21, 1890, defendants urged shipment of the goods, and, on August 29th, expressed their satisfaction at being advised of the forwarding of a part on that day, asking that the balance be sent quickly. They could not consistently urge shipment of the goods, and retain their right to demand damages for the previously existing delay in filling their order. See *Fowlds* v. *Evans*, 52 Minn. 551, (54 N. W. Rep. 743.)

Order affirmed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 131.)

Application for reargument denied June 1, 1893.