MARCUS MAURIN and Another v. D. E. LYON.[1]

July 9, 1897.

Nos. 10,612—(237).

Written Contract—Abbreviations—Parol Evidence to Explain.
Where a written contract contains characters, abbreviations, or apparently ambiguous terms, parol evidence is admissible to show that they have a recognized and generally understood meaning in the trade or business to which the subject of the contract relates. Such evidence does not vary or add to the writing, but merely translates it from the language of the trade into the language of people generally.

Statute of Frauds—Memorandum for Sale of Goods.
A memorandum of a contract for the sale of goods held to comply with the requirements of the statute of frauds.

Partnership—Power of Partner to Bind Firm.
Held, that there was no evidence to justify a finding that a certain transaction made by one partner in the name of the firm was within the scope of the partnership business.

Action in the district court for Stearns county by Marcus Maurin and Peter Maurin, co-partners as Maurin Brothers, against George Tileston to recover the purchase price of 1,520 bushels of wheat sold by plaintiffs to defendant at the agreed price of 86 cents per bushel. Defendant in his answer set up a counterclaim for $1,041.96, alleged to be due defendant for wheat sold to plaintiffs under an-

[1] Reported in 72 N. W. 72.

other contract. The case was tried before a referee, who found in defendant's favor on his counterclaim. While the action was pending defendant died, and D. E. Lyon, his executor, was substituted as defendant. From an order, Searle, J., denying plaintiffs' motion for a new trial, they appealed. Reversed.

*D. W. Bruckart*, for appellants.

*Geo. H. Reynolds*, for respondent.

MITCHELL, J.

Defendant's counterclaim is founded on an alleged purchase of 5,000 bushels of wheat by the plaintiffs from the defendant's testate, Tileston. The principal points urged by the plaintiffs are (1) that there was no sufficient memorandum of the contract of purchase to take the case out of the statute of frauds, and that parol evidence was improperly admitted to explain the terms of the written memorandum; (2) that the alleged purchase was the individual transaction of the plaintiff Marcus Maurin, and not within the scope of the partnership business.

1. The written memorandum was in the words and figures following:

"St. Cloud.
"7–6–96.
"Sold Maurin Bros.
"Cold Springs.
"5000, 1º July Del.
"99 c. Duluth

"[Signed]                                Geo. Tileston & Co.
                                         "Maurin Bros."

Both parties were engaged in buying and selling grain, and were presumably acquainted with technical terms of the trade. The referee who tried the cause admitted, over the objection and exception of the plaintiffs, parol evidence that in the trade, among buyers and sellers of wheat, the character "1º" was used to indicate the grade of the wheat, and meant, "Grade No. 1 Northern wheat"; also, that "July Del" meant July delivery (that is, that the wheat was to be delivered during July); that "99 c. Duluth" indicated the price per bushel and the place of delivery, and meant that the price was 99 cents per bushel, and the place of delivery Duluth; that these were the meanings of the characters and terms used in the

memorandum, as understood by the usages and customs of the trade among wheat men.

This evidence was competent, under the rule which admits parol evidence to show that abbreviations, and apparently ambiguous statements of description, price, etc., have a recognized meaning in the trade, and hence are a sufficient statement of the terms of the contract. This is the rule as to various abbreviations and apparent ambiguities of this nature in brief notes of mercantile contracts which are often composed, to use the language of Parke, B., in Marshall v. Lynn, 6 Mees. & W. 109, 118, in "a sort of mercantile shorthand, made up of few and short expressions, which generally express the full meaning and intention of the parties." Browne, St. Frauds, § 380. See, also, Paine v. Smith, 33 Minn. 495, 24 N. W. 305; Olson v. Sharpless, 53 Minn. 91, 55 N. W. 125; Merchant v. Howell, 53 Minn. 295, 55 N. W. 131. The parol evidence admitted in this case neither varied nor added to the written memorandum, but merely translated it from the language of the trade into the ordinary language of people generally. The memorandum, as thus translated, fulfilled all the requirements of the statute of frauds.

2. The purchase of the wheat was made by the plaintiff Marcus Maurin without the knowledge of his partner, Peter Maurin, who promptly repudiated the transaction when it came to his knowledge.

The plaintiffs had been in partnership for a number of years, engaged in conducting two general merchandise country stores,—one at Cold Springs, under the personal management of Marcus, and another at Elizabeth City, under the personal management of Peter. They sold general merchandise, and bought grain and other farm products raised in the surrounding country, paying for the same in cash or merchandise, or taking it on debts. They had an elevator at each of the points where the stores were situated, and a third elevator at the station of Carlisle (which is not far from Elizabeth City), in which they stored the wheat which they purchased. This wheat they sold sometimes to millers, and sometimes through commission men at Minneapolis or Duluth, to whom they shipped it to sell for them. Sometimes they sold this wheat for future arrival.

The firm never bought any wheat at Duluth or Minneapolis, or

sold any there, except the wheat which they bought in the country in the vicinity of their stores and elevators; and the understanding and agreement between the partners themselves was that their business of buying grain should be thus confined to the home markets (that is, the places where their stores and elevators were situated), and that their sales should be limited to the grain purchased at those points, and it had in fact been so limited, unless the purchase from Tileston was an exception. Peter Maurin had two or three years previously made two purchases of wheat in Minneapolis on speculation, but these were made in his own individual name, and on his own personal account. The purchase from Tileston was not made to fulfill any prior contract of the firm, but, so far as appears, purely on speculation, in expectation of a future rise in price. Tileston did not have the wheat on hand at St. Cloud, where he lived, or elsewhere, but after he made the contract with Marcus Maurin he bought the wheat to fill it in Duluth. This is substantially all the evidence bearing upon the nature and scope of the partnership business.

We do not think that it justified a finding that the transaction was within the scope of the partnership business, so as to bind the firm. It by no means follows, because it was within the scope of the partnership business to buy wheat from farmers and others in the vicinity of their country elevators and stores, that it was also within the scope of the business to buy large quantities of wheat in Duluth or Minneapolis for purely speculative purposes. It has been frequently held that a purchase of goods by one partner in quantities so large as to be entirely beyond the needs of the partnership business, and for speculative purposes even, though the goods be of the general character dealt in by the partnership, is beyond the scope of the partnership business, and does not bind the firm, unless an acquiescence in such act is proven, either directly or indirectly, by the usual course of dealing.

This transaction was clearly not within the scope of the partnership business, as agreed on between the partners, or as it had actually been conducted in the past. There was no evidence that Peter Maurin had ever acquiesced in any such transactions in behalf of the firm, or that the business had been so conducted as to give Tiles-

ton a right to assume that the transaction was within the scope of the partnership business. If he was not advised as to the nature or limits of that business, it was his duty to inform himself on the subject before accepting a contract made in the name of the firm. It is clear from the evidence that the partnership agreement conferred no actual authority to make the purchase in dispute. No such authority can be inferred or implied from the previous course of business of this character carried on by one partner with the knowledge of the other, for the proof furnishes no foundation for any such implication. Neither was the previous course of business such as to furnish any foundation for the claim that the transaction was within the apparent scope of the partnership. The fourth finding of fact is therefore without evidence to justify it. Although the evidence and finding may establish a cause of action against Marcus Maurin individually, yet this cannot, under the statute, be set up as a counterclaim to a cause of action against the copartnership.

The order appealed from is therefore reversed, and a new trial granted.