## MILLER PUBLISHING COMPANY v. F. W. ORTH AND ANOTHER.[1]

### May 26, 1916.

### Nos. 19,694—(99).

**Contract — question for jury.**

1. Whether the contract in controversy was made before or after the defendants formed a partnership was a question for the jury and not for the court.

**Same.**

2. Whether the agreement between the defendants was limited to the purpose of leasing a flouring mill and fitting it for operation, with a further provision that when it was ready for operation they would then join in forming a company to operate it, or whether such agreement contemplated that defendants should lease and repair the mill and thereafter operate it themselves was also a question for the jury.

**Authority to make advertising contract.**

3. If the agreement between the defendants contemplated the operation of the mill, the making of a contract to advertise the flour to be manufactured by it was within the scope of such agreement; if the agreement only contemplated the leasing and repairing of the mill, the

[1]Reported in 157 N. W. 1083.

making of a contract to advertise the flour to be manufactured by it in the future was not within the scope thereof.

**Charge to jury correct.**

4. The contract with plaintiff was made by defendant Comer only and had never been ratified by the other defendants, and, in order to recover against the other defendants, it was incumbent upon plaintiff to establish that such contract was made after the agreement between Comer and the other defendants had been entered into, and that the making thereof was within the scope of the authority conferred upon Comer by such agreement; and the court did not err in charging the jury that plaintiff could not recover, if its contract was made before the agreement between Comer and the other defendants had been entered into, nor if such agreement contemplated only the leasing and repairing of the mill.

Action in the district court for Renville county against F. W. Orth, R. B. Henton and H. S. Comer, as partners doing business under the firm name of Morton Milling Company, to recover $180 for publishing their advertisement in plaintiff's trade journal known as "The Northwestern Miller." The case was tried before Qvale, J., and a jury which returned a verdict in favor of defendants Orth and Henton. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*H. L. Hoidale,* for appellant.

*John A. Dalzell* and *L. D. Barnard,* for respondents.

TAYLOR, C.

Alleging that the defendants were copartners under the firm name of the Morton Milling Company, plaintiff brought this suit against them to recover the balance due upon a contract, executed in the name of that company by defendant Comer as president, to publish an advertisement of the flour of the company in the Northwestern Miller for one year. Defendant Comer did not answer, and was the principal witness for plaintiff. Defendants Orth and Henton answered denying the partnership, and the principal question submitted to the jury was whether such partnership existed at the time Comer executed the contract. The jury returned a verdict in favor of the answering defendants. Plaintiff made

a motion in the alternative for judgment notwithstanding the verdict, or for a new trial, and appealed from the order denying its motion.

Plaintiff insists that the evidence conclusively established that defendants were partners when Comer made the contract in controversy, and that the court should have so ruled as a matter of law instead of submitting the question to the jury. The answering defendants did not know of the making of the contract until two or three months after it was made, and when they learned of it, they refused to ratify it, and desired plaintiff to cease publishing the advertisement as no flour had been manufactured and the project had been abandoned. Plaintiff refused to do so and proceeded to make the publication for the remainder of the year, and then brought this suit. To understand the questions presented it is necessary to state some of the facts.

Certain parties residing at New Ulm owned and operated a flour mill at that place, and also owned a flour mill at Morton which they had ceased to operate. At the Morton mill, they bought wheat and kept for sale flour manufactured at the New Ulm mill. Defendant Comer had previously been engaged in milling at Fairfax, but had severed his connection with the Fairfax mill. He entered into negotiations with defendants Orth and Henton, with a view of securing the Morton mill, putting it into condition for operation and then operating it. Orth was a banker and Henton a merchant at Morton, and both desired to have the mill put in operation. Comer made an estimate that it would cost from $1,000 to $1,500 to fit up the mill ready to operate. After conferring with Orth, he opened negotiations with the owners of the mill and obtained from them a proposition to lease the mill with an option to purchase it, lessee to purchase the wheat and flour then therein. After some modifications, the proposition was accepted, a lease executed, and the wheat and flour inventoried and paid for. Comer proceeded to remodel and repair the mill, and, after an expenditure of some $6,500, it was found that the mill would not make flour fit to put upon the market, and the entire project was abandoned without any attempt to operate the mill. The agreement between Comer, Orth and Henton provided that Comer could put into the project whatever amount of money he chose, and that Orth and Henton together would furnish an equal amount; that Comer should have a one-half interest therein and Orth

and Henton each a one-quarter interest therein; and that Comer should carry on the undertaking as manager. Comer claims that it was agreed that the three should lease, remodel and operate the mill as partners. Orth and Henton claim that they merely agreed with Comer to join with him in leasing and refitting the mill, with a further agreement that, when the mill was ready to operate, they would join with him in forming a company to operate it; and that they were never in partnership with him. Whether the arrangement amounted to a partnership is not important. Orth and Henton gave Comer the full control and management of the enterprise, and are responsible for his contracts as their agent, made within the scope of his agency, even if not partners. If partners, they were responsible for his contracts made within the scope of the partnership. Liability on either theory rests upon the doctrine of agency; and if the making of the contract with plaintiff was within the scope of the partnership, if one existed, it was likewise within the scope of the agency. Plaintiff contends that they became partners and for the purposes of this case we will assume that such was the fact.

In order to recover against Orth and Henton, plaintiff was required to establish that they had entered into the partnership agreement with Comer before he made the contract in controversy, and that the making of such contract was within the scope of the authority conferred upon him by such partnership agreement.

On September 5, 1913, the lease was prepared and signed by Comer and some of the owners. The lease was subsequently modified and was not executed by Orth and Henton until September 22. The claim that the partnership went into effect prior to that date rests upon the testimony of Comer. He stated several times that the partnership began when the lease was executed, and that the lease was executed prior to September 16, the date of the contract in controversy. On being confronted with the lease and with a letter from one of the owners, dated September 18, in reference to modifications in the lease, he admitted that he had his dates mixed and that the lease had not been executed until after the eighteenth.

Comer, Orth and Henton each deposited a sum of money in the bank to the credit of the Morton Milling Company to be checked out by Comer, in the name of that company, as needed in carrying out the project. An

inventory was taken of the wheat and flour in the mill, and Comer paid for it by drawing a check upon the bank. Comer testified that the deposit was made and the inventory taken at the same time, and that the partnership began at that time. He was uncertain as to the exact date, but was positive that it was before September 16. He took possession of the mill and began making his repairs, but is not sure whether this was before or after the execution of the lease. Until documentary evidence established that the lease had been executed on September 22, he had insisted that the partnership began when the lease was executed, and that the lease had been executed before September 16. In view of the fact that his memory was admittedly at fault in this respect, we cannot say that it conclusively appears from his testimony that the partnership began before the making of the contract in controversy, and whether it began before or after the date of that contract was a question for the jury.

The contract with plaintiff provided for advertising the flour of the Morton Milling Company in each issue of plaintiff's paper for one year, and had reference to the flour which was to be manufactured by the Morton Mill. Comer testified to the effect that he, Orth and Henton constituted the Morton Milling Company, and that the original agreement between them contemplated that they were to operate the mill as well as repair it. Orth and Henton testified that their agreement with Comer went no further than to provide for refitting the mill and putting it in condition to operate, with a further agreement that, when this had been accomplished, they would then join with him in organizing a company to operate it. If the agreement contemplated the operation of the mill, as claimed by Comer, the contract for advertising may fairly be deemed to have been within the scope of the partnership business. If the agreement only contemplated the acquiring of the lease and the repairing of the mill, as claimed by Orth and Henton, the contract for advertising was not within the scope of the business as thus limited. Maurin v. Lyon, 69 Minn. 257, 72 N. W. 72, 65 Am. St. 568; First National Bank v. Stadden, 103 Minn. 403, 115 N. W. 198. Which contention was correct was a question for the jury.

The court charged the jury that "defendants Henton and Orth claim * * * that they were simply aiding and assisting Mr. Comer to and for the purpose of placing this mill in condition whereby it could be

operated in the future and that they would in the future arrange a partnership or corporation. Now, if that is true, plaintiff cannot recover in this case." He also charged the jury to the effect that if the contract in controversy was made before the partnership agreement was entered into plaintiff could not recover. Plaintiff contends that these instructions were erroneous. If the parties limited their undertaking to the securing of the lease and the refitting of the mill, and were not to arrange for the operation of the mill until it was ready for operation, the making of the contract in controversy was not within the scope of the authority conferred upon Comer.

Plaintiff made its contract with Comer only, and had nothing except Comer's statement to indicate that Orth and Henton were associated with him. Their names do not appear in the contract. Orth and Henton have never ratified that contract, and are not bound by it unless Comer had authority to act for them as well as for himself in making it. Whatever authority Comer had was conferred by the so-called partnership agreement, and he could not bind Orth and Henton by any engagements entered into prior to the making of that agreement, unless such engagements were subsequently ratified by them. Consequently the court did not err in giving the above instructions.

Plaintiff also takes exception to other portions of the charge. While we should have been better satisfied if the court had dwelt more upon the evidence tending to sustain plaintiff's contention, or less upon that tending to sustain Orth's and Henton's contention, we think the court did not give such undue prominence to the latter evidence as to warrant a reversal upon that ground.

Plaintiff also complains that the court did not define with sufficient fullness under what circumstances Orth and Henton would become partners with Comer. Plaintiff presented no request which properly covered that matter, and is not now in position to raise the question. We find no reversible error and the order appealed from is affirmed.