S. E. Olson *vs.* Henry W. Sharpless, *et al.*

Submitted on briefs April 10, 1893. Decided April 27, 1893.

| 53 | 91 |
| 69 | 259 |

| 53 | 91 |
| 79 | 372 |

**Order, Telegram and Letters Construed and Held to be a Contract.**

*Held,* that certain writings, when taken together, constituted a sufficient memorandum of a contract for the sale of goods under the statute of frauds.

**Evidence upon the Measure of Damages.**

Also, that the admission of certain evidence was not, under the particular facts of the case, in conflict with the rule that, on the seller's failure to deliver the goods, the measure of damages is the difference between the contract price and the price at the time when, and the place where, the goods should have been delivered.

Appeal by defendants, Henry W. Sharpless and Townsend Sharpless, from a judgment of the District Court of Hennepin County, *Thomas Canty,* J., entered November 15, 1892, for $137.26.

In 1890, the plaintiff, S. E. Olson, was a retail merchant doing business in Minneapolis under the name of S. E. Olson & Co. Defendants were wholesale merchants doing business at Philadelphia, Pa., under the name of Sharpless Bros. Their traveling salesman L. F. Rockwell called upon plaintiff November 19, 1890, and obtained from him an oral order for one hundred and one pieces of cashmere, ordinary colors, and nineteen pieces, high colors, averaging forty-eight yards per piece, to be sent plaintiff by rail as freight between January 15, and February 1, 1891. The bill was to be dated April 1, 1891. Price was to be forty cents per yard "regular" on the entire bill. This oral agreement Rockwell entered on a blank he carried, and on the same day mailed it to defendants, with a letter dated at Stillwater, stating that plaintiff would like to have them telegraph him their acceptance of the order. On November 27, 1890, they sent plaintiff a telegram that forty cents "net" was the best they could accept for nineteen pieces high colors, and asking a reply. Plaintiff wrote them that day stating that their telegram was received, and that he accepted their terms of one hundred and one pieces at forty cents "regular," and nineteen pieces at forty cents "net." On November 29, defendants wrote to plaintiff stating they had wired plaintiff on the 27th regarding the or-

der Rockwell took on colored cashmeres; that the best price they could accept was forty cents "regular" for ordinary colors, and forty cents "net" for high colors. On January 1, 1891, the price of the goods advanced, and defendants refused to deliver. Plaintiff bought the goods in New York, paying $99.82 more than he was to pay defendants. He brought this action to recover the excess in market value, over the contract price. A jury was waived. Evidence was given as to the meaning in the trade of the words "net" and "regular," and plaintiff had judgment for this excess, with interest and costs.

*Evans, Keith, Thompson & Fairchild,* for appellants.

There is no conflict of testimony in this case. The contract, if any was made, is in writing, and the court has only to construe the written instruments to determine the case. Defendants contend that the evidence shows that no agreement was ever arrived at between the parties. All the essential elements of the contract, if agreed upon by the parties, must appear in the memorandum. It must contain the names of both buyer and seller. *Clampet* v. *Bells,* 39 Minn. 272; Benjamin, Sales, § 234. And where the price is agreed upon, it must be stated in writing. *Hanson* v. *Marsh,* 40 Minn. 1; Benjamin, Sales, § 249. The order was a mere offer of plaintiff, and not a contract, until accepted by defendants. They were at liberty to accept or reject it as they might see fit. *Boynton Furnace Co.* v. *Clark,* 42 Minn. 335; *Banks* v. *Charles P. Harris Mfg. Co.,* 20 Fed. Rep. 667; *Frank* v. *Eltringham,* 65 Miss. 281; *National Ref. Co.* v. *Miller,* 3 N. Dak. ——. The telegram and letter of November 27, and the letter of November 29, constitute the correspondence. It all has reference to the question of price only. It is practically conceded that no contract was made prior to this correspondence. A contract cannot be predicated upon defendants' telegram of November 27, and plaintiff's alleged reply to it, as the telegram refers only to nineteen pieces of high colored goods, while the alleged reply accepts the price upon these, and upon one hundred and one pieces besides, which are not referred to in the telegram.

Defendants' position in this case is, that no contract was made or could be made, until plaintiff's order was passed upon by their

credit department. This is reasonable in view of the universal custom of wholesale houses to maintain such credit departments, to which are referred all orders for the purchase of goods on credit.

If a contract of sale was made, plaintiff can recover only nominal damages, as he failed to bring himself within the rule for proving damages for the breach of such a contract. The measure of damages is the difference between the contract price and the price of the goods at the time when, and at the place where, they should have been delivered. The place for delivery under this contract was at Philadelphia, the place where the sellers did business. *Janney* v. *Sleeper*, 30 Minn. 473. The time of delivery was January 15, 1891. There is no evidence whatever tending to show the market price of the goods in question at Philadelphia on January 15, or that the market price was anything in excess of the contract price. What respondent paid for similar goods in New York is wholly immaterial.

*J. F. McGee*, for respondent.

Plaintiff's letter of November 27, 1890, accepting the offer contained in defendant's telegram of the same date, was effective as an acceptance, from the time the letter was deposited in the post-office. Chitty, Contracts, 17; Bishop, Contracts, § 328, note; Benjamin, Sales, § 69; *Kessler* v. *Smith*, 42 Minn. 494.

The order of November 19 states the date and parties to the transaction; the shipping directions, quantity, price, and term of credit given. The telegram of November 27, and the letter of November 29, state the price, the terms of sale, that is, ordinary colors, "regular," and high colors "net," and that defendants will accept plaintiff's order at the prices and on the terms stated, and to each exhibit is appended the signature of defendants. The terms "regular" and "net" are technical terms, in general use among wholesale houses, and have a well-understood meaning, which has been explained by persons familiar with the same.

MITCHELL, J. Defendants' assignments of error are all directed to two general propositions: *First*, that no contract or agreement was ever arrived at between the parties; and, *second*, that the trial court adopted an erroneous measure of damages.

In support of the first proposition it is urged (1) that the defendants never accepted plaintiff's order for the goods, and hence that no contract was agreed to, even orally, and, (2) even if there was, there was no written memorandum of it sufficient to satisfy the statute of frauds. The memorandum need not be a single paper. Several papers may be taken together to make up the memorandum, providing they refer to one another, or are so connected together, by reference or by internal evidence, that parol testimony is not necessary to establish their connection with the contract. The order, with the letter of defendants' agent accompanying the same, and defendants' telegram and letter to plaintiff, together with plaintiff's letter of acceptance, which had been lost, but of whose contents secondary evidence was introduced, fully justified a finding that the minds of the parties had met and agreed on the terms of the contract, and also satisfied the requirement of the statute of frauds. With the meaning of the technical trade terms "net" and "regular" explained, the writings, when taken together, contained all the essential elements of the contract,—the names of the buyer and seller, the description of the property, the price, the date of delivery or shipment, etc.

The suggestion that the telegram and letter of defendants to plaintiff were intended merely to adjust the *price*, and left them still free to reject the order on any other ground, seems to us more ingenious than ingenuous.

Undoubtedly, when the order was forwarded to defendants, they were at liberty to accept or reject it, as they saw fit, or to demand from plaintiff a property statement before deciding whether to accept or reject it. But that right was ended when the offer was accepted. They could not thereafter attach any new condition to the performance of their contract.

The fair import of their communications to plaintiff (and what, as we think, any business man would have understood from them) was an offer to sell the goods according to the terms of the order, subject only to a modification of the price of the 19 pieces specified; and when plaintiff replied, accepting the offer, the contract was closed. There is nothing in the point that plaintiff did not seasonably notify defendants of his acceptance of the offer. The testimony is that he mailed his acceptance on the same day he received the

telegram, (November 27th,) which in due course of mail presumably reached defendants on or before December 1st.

2. The place of delivery being Philadelphia, where the sellers did business, the defendants' counsel correctly state the measure of damages as being the difference between the contract price and the market price in that city at the time when the goods should have been delivered, (which was January 15th;) and they assign as error the admission of evidence as to the price of the same goods in the city of New York, where plaintiff bought them, between January 15th and 20th. It appears in evidence that all goods of this brand are manufactured by one mill; that they "have a fixed [by which we understand is meant uniform] price in the trade;" that a single agent of the manufacturers, whose office is in New York, has control of the entire output of the mill, and fixes the price of the goods for the trade; that plaintiff applied to this agent, and obtained his prices and terms, and then went to H. B. Claflin & Co., and, finding their terms a little more favorable as to time of payment, purchased of them at prices as favorable as he could obtain anywhere. It also appears that the prices which he paid were less than 5 per cent. in excess of those at which defendants had contracted for with him. It also appears that defendants wrote to plaintiff in November that the price in Philadelphia had been already advanced one cent a yard, and again, in December, that they had written to all jobbers that on January 1st the goods would be advanced 5 per cent. It seems to us that the effect and fair import of this evidence was to show that plaintiff had duplicated the order in New York on at least as favorable terms as could have been obtained in Philadelphia; and, if so, certainly defendants have no ground of complaint.

Judgment affirmed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 125.)