**VESS BEVERAGES, INC.,**
**Plaintiff–Appellee,**

v.

**The PADDINGTON CORP. and Morgan Furze, Ltd., Defendants–Appellants.**

**No. 88–2479EM.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1989.

Decided Sept. 26, 1989.

Rehearing Denied Nov. 1, 1989.

Howard Graff, New York City, for defendants-appellants.

Steven G. Schumaier, St. Louis, Mo., for plaintiff-appellee.

Before ARNOLD and MAGILL, Circuit Judges, and PECK,* Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

In this diversity contract action we must decide the applicability of two Missouri statutes of frauds, at Mo.Rev.Stat. §§ 432.-010 and 400.2–201(1) (1959), to the oral contract at issue. Appellants, the Paddington Corp. and its fully owned subsidiary Morgan Furze, Ltd. (collectively "Padding-

ton"), argue that the alleged oral agreement with Appellee Vess Beverages, Inc., for the sale of Paddington's Steidl Wine Cooler concern, falls within the statutes of frauds and is, therefore, unenforceable. Paddington also argues that the employee who negotiated the deal lacked the authority to bind it and that the damages awarded by the district court are erroneous.

## I. BACKGROUND

The parties' relationship began during 1985, when Paddington agreed orally with Vess Beverages that Vess Beverages would take over its production of wine cooler beverages sold under the Steidl Wine Cooler name. Vess Beverages produced the wine cooler for Paddington for approximately one and one half years under this oral agreement. Sometime early in 1986, Richard Keller, the general manager of Steidl Wine Cooler, contacted Don Schneeberger, the President of Vess Beverages, concerning a proposal to sell Steidl Wine Cooler. Negotiations for the proposed sale of Steidl Wine Cooler's assets, including the name began on June 2, 1986. On June 4, 1986, Keller sent a letter to Schneeberger proposing terms for the sale. In response, Schneeberger contacted Dave Welch, an employee of Paddington who later joined Vess Beverages as its production development manager, to set up a meeting regarding the proposal. Schneeberger met with Welch and Keller on June 26, 1986 in St. Louis, where he told them that the asking price was too high for a company that was daily losing money.

Schneeberger sent Keller a counter-proposal for the sale on August 5, 1986. On August 12, Schneeberger, Welch, and Keller again met in St. Louis at Vess Beverages' plant. Vess Beverages contends Keller assured it he had "complete authority" to sell Steidl Wine Cooler. Keller took notes (the "Keller notes") of the discussions at the meeting which contained all of the essential terms for the sale of Steidl Wine Cooler except for the method of payment.

* The Honorable JOHN W. PECK, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

At the top of the notes Keller inscribed the initials of the persons present at the meeting and wrote "No Publicity At All," indicating both parties' preference that the sale not be advertised. The Keller notes provided that Vess Beverages would purchase at a price of $.50 on the dollar all raw materials and bottles and at a price of $.25 on the dollar all cans, finished goods, and point of purchase items. Vess agreed to pay Paddington $10,000 for the Steidl Wine Cooler trademark. In addition, the notes provided that Vess Beverages would pay to Paddington a royalty on all cases of wine cooler sold outside the St. Louis area, defined as states other than Missouri, Illinois, Kansas, Nebraska, and Oklahoma, at a rate of $1 per case the first year and $.25 per case the second year. A meeting was scheduled for August 28, 1986 to complete the negotiations, which was later changed to September 4, 1986.

The same parties met again on September 4, 1986. At the meeting, Keller again took notes (also the "Keller notes") of the details of the meeting and allegedly assured Schneeberger he had the authority to sell Steidl Wine Cooler. The parties agreed upon the method of payment and set a closing date of September 17, 1986, at which time the parties would inventory all of the physical assets so the exact price of the sale could be calculated. Keller was to prepare the closing documents, which he did in fact prepare. Again, Vess Beverages alleges Keller assured Schneeberger that he had full authority to sell Steidl Wine Cooler. Following the meeting, Schneeberger began preparing for the marketing and sale of Steidl Wine Cooler beverages.

Schneeberger contacted Paddington several times between the September 4 meeting and the date scheduled for the closing. He alleges that Keller told him at least once that he was the owner of Steidl Wine Cooler. However, Vess Beverages never received the closing documents, nor was the closing ever held. During the first week of October, 1986, Schneeberger met with Keller in Dallas, Texas. Keller told Schneeberger that, although Schneeberger was the rightful owner of Steidl Wine Cool-

er, the deal was off and that Paddington was using him [Keller] as a "fall guy" by saying that he never had the authority to sell Steidl Wine Cooler. Schneeberger then called Peter Thompson, the President of Paddington, to inquire about the deal arranged with Keller. Thompson told him that Keller never had the authority to sell Steidl Wine Cooler, that another company had offered $500,000 more, and that he would sell to that company.

Vess Beverages filed suit against Paddington in district court, seeking damages for the repudiation of their oral agreement for the sale of Steidl Wine Cooler. Paddington moved for summary judgment based on the statute of frauds, which was denied. At the close of Vess Beverages' case and again at the end of all the evidence, Paddington moved for directed verdicts which were denied. In instructing the jury, the district court also refused Paddington's request to instruct the jury as to the statute of frauds. The jury returned a verdict finding that Paddington had breached the oral agreement to sell Steidl Wine Cooler and was liable to Vess Beverages in the amount of $500,000. Paddington filed motions for judgment notwithstanding the verdict and for a new trial, based in part on the statute of frauds, which were summarily denied.

## II. DISCUSSION

Two Missouri statutes of frauds are relevant to the question of whether the oral agreement for the sale of Steidl Wine Cooler is enforceable. Paddington contends that the alleged oral agreement is unenforceable as a matter of law because it falls within the statutes of frauds, as an oral contract not to be performed within one year of its making and as an oral contract for the sale of goods in the amount of $500 or more. Mo.Rev.Stat. §§ 432.010 and 400.2-201(1). Appellee argues, to the contrary, that the oral contract can be performed within a year and is for the sale of a business, not goods; therefore, the oral contract is enforceable since it falls outside the statutes of frauds.

To plead the statute as a defense against enforcement of an oral agreement, the trial court must be apprised of its applicability. The issue must be brought to the attention of the trial court by the pleadings or by objections to testimony. *See Whale Art Co. v. Docter,* 743 S.W.2d 511, 515 (Mo.App.1987); *Leeson v. Etchison,* 650 S.W.2d 681, 683 (Mo.App.1983). Pleading the statute alone without contemporaneous objection to evidence submitted on the existence of a contract is insufficient to establish the statute of frauds as a defense. *See Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 879 (Mo.App.1984); *Justus v. Webb,* 634 S.W.2d 567, 569 (Mo.App.1982). Here, the record is clear that Paddington repeatedly notified the district court of its defense based on the statute of frauds. In addition to pleading the statute as an affirmative defense in its answer, Paddington's repeated evidentiary objections, two motions for directed verdict, a motion for judgment notwithstanding the verdict, and a motion for new trial each raised the statute of frauds. The district court gave no meaningful explanation for its refusal to consider the effect of either statute of frauds on the enforceability of the oral agreement. Because the district judge failed to make any express determination other than its summary denials of Paddington's objections and motions, we must consider the applicability of both statutes of frauds to the oral agreement at issue.

A. Section 432.010

Paddington contends the oral agreement for the sale of Steidl Wine Cooler violates the one year statute of frauds at Mo.Rev.Stat. § 432.010, which provides:

No action shall be brought * * * upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith * * *.

Paddington argues Vess Beverages' obligation to make royalty payments for two years violates this statute of frauds. Vess Beverages responds that the contract is one to be performed within one year. Vess Beverages submits that it could have paid off the royalty payment immediately since they could easily have been estimated for prepayment and that the royalty payment was only an incidental part of the contract that should not be used by Paddington to avoid the contract. Vess Beverages argues further that there is no guarantee that any cases of the wine cooler would have been sold outside the St. Louis area, thereby relieving it of its royalty payment obligation and transforming the contract into one which could be performed within one year.

The longstanding interpretation of the one year provision in this statute of frauds is that an oral contract for a definite period of time exceeding one year falls within the statute and is unenforceable unless some written memorandum sufficiently documents the contract to take it outside the statute of frauds. *See International Plastics Development, Inc. v. Monsanto Co.,* 433 S.W.2d 291, 292–93 (Mo.1968) (en banc); *Blue Valley Creamery Co. v. Consolidated Products Co.,* 81 F.2d 182, 184 (8th Cir.1936) (interpreting Missouri law). In this case, the agreement provided that Vess Beverages was to pay royalties on all cases of wine cooler sold outside the St. Louis area for a period of two years. Despite Vess Beverages' assertion that it had a sufficient line of credit from a lending institution and an accurate estimate of the sales volume outside the St. Louis area to be able to prepay the obligation and that the royalty obligation was only incidental, the record is clear that the obligation was to pay royalties for two years on the actual sales volume outside the St. Louis area. Where the agreement is definitive as to the obligation and the length of time the obligation is to run, we will not ignore the agreement's clear violation of the statute of frauds. This case is not analogous, as Appellee suggests, to those employment contract cases in which there is an oral promise to hire a person for life, or in other words for an indefinite time. In those cases the courts generally find the contract could be performed within one year. *See*

*Crabb v. Mid–American Dairymen, Inc.,* 735 S.W.2d 714, 716 (Mo.1987) (en banc); *see also Koman v. Morrissey,* 517 S.W.2d 929, 935 (Mo.1974). Had the parties here agreed to royalty payments for an indefinite time, the agreement would fall outside the statute of frauds, too, and as such be enforceable. The agreement, however, provided for royalty payments on the actual sales volume outside the St. Louis area for the definite period of two years following the consummation of the sale.

Vess Beverages' argument that it might sell no wine cooler outside the St. Louis area, thereby rendering the obligation illusory is similarly without merit. The contemplation of the statute is to encourage "full and complete performance" of a contract and not a cancellation. *Blue Valley Creamery,* 81 F.2d at 185 (citing *Biest v. Ver Steeg Shoe Co.,* 97 Mo.App. 137, 151, 70 S.W. 1081, 1086 (1902)). As this circuit long ago clarified, there is an important distinction between a contingency which fulfills the contractual obligation and one which defeats or prevents the obligation. *Id.* "The one that depends upon the defeasance or matter of avoidance is within the statute, while the other is not." *Id.* Vess Beverages' contention that no wine cooler might be sold outside the St. Louis area in the next two years is clearly the sort of contingency which defeats the contractual obligation.

We hold the district court erred in failing to apply Mo.Rev.Stat. § 432.010 to the oral agreement that is the subject of this case. As the Missouri Court of Appeals said long ago: "It is well-nigh universally held that if an agreement fixes a definite period longer than a year during which performance shall continue, so that it was plainly not contemplated by the parties that it should terminate sooner, the statute applies * * *." *Biest,* 97 Mo.App. at 150, 70 S.W. at 1086. The performance of this agreement is one which the parties clearly contemplated would exceed one year and which, therefore, falls squarely within this statute of frauds.

Because we are of the view that the district court erred in failing to apply

the section 432.010 statute of frauds, we now turn to the question of whether there was a writing sufficient to take the oral agreement out of the statute of frauds. To satisfy the writing requirement of section 432.010, the writing must contain all of the essential terms of the contract. *See Kansas City Power and Light Co. v. Burlington Northern Railroad Co.,* 534 F.Supp. 1318, 1323 (W.D.Mo.1982), *aff'd,* 707 F.2d 1002 (8th Cir.1983); *Campbell v. Sheraton Corp. of America,* 363 Mo. 688, 253 S.W.2d 106, 110 (1952). The essential elements include: the parties and the subject matter; the consideration and the price; and the promises exchanged by the parties. *Ray v. Wooster,* 270 S.W.2d 743, 752 (Mo.1954). The memorandum need not be a single document but may be composed of a series of writings, the combination of which supply all of the essential terms. *See Bayless Materials Co. v. Peerless Land Co.,* 509 S.W.2d 206, 211 (Mo.App.1974); *see also Mayer v. King Cola Mid–America, Inc.,* 660 S.W.2d 746, 748 (Mo.App.1983); *Arnold v. Broadmoor Development Co.,* 585 S.W.2d 564, 566 (Mo.App.1979). Of great importance under this statute, however, is that the writing be signed by the party to be charged. *Thrower v. Keltner,* 213 S.W.2d 476, 477 (1948). The signature may take many forms and be located anywhere in the writing, so long as it conveys an intention to authenticate the writing. *Dinuba Farmers' Union Packing Co. v. J.M. Anderson Grocer Co.,* 182 S.W. 1036, 1039 (Mo.App.1916); *see also Sedmak v. Charlie's Chevrolet, Inc.,* 622 S.W.2d 694, 699 (Mo.App.1981) (describing the Uniform Commercial Code signature requirement). Whether a particular "signature" was intended to authenticate a document is a question of fact. *Id.* As the district court failed to address the statute of frauds at all or the sufficiency of the writings to evidence the contract, we remand this question to the district court to determine whether the Keller notes satisfy the section 432.010 writing requirement.

### B. Section 400.2–201(1)

Paddington also argues the oral agreement for the sale of Steidl Wine Cooler

violates the writing requirement of Mo. Rev.Stat. § 400.2–201(1), which provides:

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Paddington submits the agreement was one primarily for the sale of goods and, therefore, is unenforceable since it is not in writing. As proof, Paddington asserts that over 80% of the final purchase price was allocated to goods such as the cans, bottles, and point of purchase items of Steidl Wine Cooler. Vess Beverages responds that section 400.2–201(1) does not apply since the agreement was one primarily for the sale of Steidl Wine Cooler as a going concern, not for the individual goods that necessarily accompanied the sale.

Whether an agreement is subject to the section 400.2–201(1) statute of frauds depends on whether the subject of the sale falls within the statutory definition of "goods," at section 400.2–201(1) which includes: "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." Mo.Rev. Stat. § 400.2–105 (1965). The test for whether a particular agreement involves the sale of goods is "whether 'the predominant purpose or character' of the agreement is the sale of goods or something else." *United Industrial Syndicate, Inc. v. Western Auto Supply Co.,* 686 F.2d 1312, 1314 (8th Cir.1982) (interpreting Missouri law and citing *Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974)). Furthermore, even sales in which goods constitute a substantial part may have a predominant purpose independent of the sale of goods and be outside the section 400.2–201(1) statute of frauds. *Id.* at 1315.

In the oral agreement for Steidl Wine Cooler, while it may be true that a great proportion of the proceeds of the sale were earmarked to compensate Paddington for the exchange of goods, it is equally true that a portion of the proceeds was for the purchase of the Steidl Wine Cooler trademark. On the record of this case, we cannot say as a matter of law that this oral agreement is predominantly for the sale of goods. Factors relevant to the determination include the terms of the oral agreement and the "customs and usages in the industry." *Prince v. Spire Corp.,* 584 S.W.2d 108, 111 (Mo.App.1979). The determination of the character and purpose of the agreement is an issue of fact properly for resolution by the district court. *Id.* Accordingly, on the remand hereinafter ordered, the district court must resolve the preliminary question as to the predominant character of this agreement, from which follows the determination of whether the statute of frauds applies.

Should the district court determine that section 400.2–201(1) applies, it will also have to consider whether the Keller notes satisfy the statute's writing requirement. The writing requirement to satisfy section 400.2–201(1) requires only that the writing evidence an agreement to sell goods; that the writing be signed by the party to be charged; and that a quantity be specified. *See Charlie's Chevrolet, Inc.,* 622 S.W.2d at 699 (quoting Mo.Rev.Stat. § 400.2–201, comment 1).

## III. CONCLUSION

Because of our disposition in this case, we do not reach the issues Appellant raised concerning the apparent authority of Keller to enter into a contract binding on Paddington and the calculation of damages. We reverse the judgment for Appellee Vess Beverages and remand to the district court for determination of whether the Keller notes are sufficient to satisfy the writing requirement of section 432.010. If the district court determines there is insufficient evidence to satisfy the writing requirement of section 432.010, then the court must further determine whether the oral agreement falls within the purview of section 400.2–201(1) and whether the Keller notes satisfy the less stringent writing require-

ment of section 400.2–201(1). Thus, if the district court determines either that the agreement is one for the sale of a business instead of goods for five hundred dollars or more, or that the Kellar notes fail to satisfy the writing requirement of section 400.-2–201, then the contract is unenforceable.