**VESS BEVERAGES, INC., Appellant,**

**v.**

**The PADDINGTON CORPORATION, Morgan Furze, Ltd., Appellees.**

**No. 90–2316.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1991.

Decided Aug. 5, 1991.

Steven Schumaier, argued (Firmin A. Puricelli, on brief), Clayton, Mo., for appellant.

Howard Graff, argued (William B. Schreiber, Deborah A. Skakel and Terese L. Arenth, on brief), New York City, for appellees.

Before McMILLIAN and MAGILL, Circuit Judges, and BRIGHT, Senior Circuit Judge.

MAGILL, Circuit Judge.

Vess Beverages, Inc., appeals from the decision of the district court[1] setting aside a jury verdict for Vess in its diversity contract action and entering judgment for the defendants, The Paddington Corporation and its wholly owned subsidiary, Morgan Furze, Ltd. (collectively "Paddington"). Vess contends that the district court erred in holding that the Missouri Statute of Frauds barred enforcement of its alleged oral contract with the defendants. We affirm.

I.

Vess, which is based in St. Louis, makes and sells soft drinks. Paddington, an international firm, imports and distributes liquor. In 1985 Paddington and Vess agreed orally that Vess would take over production of Steidl Wine Cooler, a Paddington brand. Vess produced the wine cooler for approximately a year and a half under this agreement. In early 1986 Paddington decided to sell Steidl because sales of the wine cooler were declining and profits were nonexistent. Vess expressed interest in buying it, and negotiations began in June 1986 when Richard Keller, general manager of Steidl Wine Company, sent a letter to Don Schneeberger, president of Vess, proposing terms for the sale of Steidl's assets and the Steidl name.

Schneeberger sent Keller a counter-proposal on August 5, 1986. On August 12, Schneeberger, Keller, and Dave Welch met at the Vess plant in St. Louis. Welch, who had arranged the meeting, was a Paddington employee based in St. Louis who was in charge of quality control at Steidl. He

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

later joined Vess as its manager of new product development after the relationship between Vess and Paddington deteriorated. Keller took notes of the terms discussed and allegedly agreed on at the meeting. At the top of the notes Keller wrote the date, the initials of those present at the meeting, including himself, and "No Publicity At All," indicating the parties' preference that the sale not be advertised. Keller told Schneeberger that he had full authority to sell Steidl, and all the essential terms for the sale of Steidl Wine Cooler were agreed on except for the method of payment. The notes provided that Vess would purchase all full cans and bottles and all packaging materials except empty cans at 50% of their value. The parties further agreed that Vess would purchase Steidl promotional items and empty cans for 25% of their value. In addition, Vess agreed to pay Paddington $10,000 for the Steidl Wine Cooler trademark. The notes further provided that Vess would pay Paddington a royalty on all cases of wine cooler sold outside the St. Louis region (defined as Missouri, Illinois, Kansas, Nebraska, and Oklahoma). The royalty was to be $1 per case the first year and $.25 per case the second year. A second meeting to set the method of payment and finalize the agreement was scheduled for August 28 but later changed to September 4.

Later on August 12, Welch told Schneeberger that after the meeting that day at Vess, Keller and Welch had gone to meet with representatives of another company, where Keller had agreed to sell Steidl to that company for $750,000 if the other company could arrange secured financing. Schneeberger decided to wait and see what happened with that deal; he did not think it would interfere with the Vess–Paddington deal because the other company's financial position was shaky.

Schneeberger, Keller, and Welch met again on September 4. Again, Keller took notes, but this time he did not write down any initials at the top. However, as the negotiations proceeded, Schneeberger wrote in some changes on Keller's notes and ok'd or initialed some of the provisions.

Schneeberger also made a copy of the notes for himself. During the meeting, Keller again assured Schneeberger he had authority to sell Steidl. When it ended, Keller and Schneeberger shook hands on the deal, and Keller told Schneeberger that he now owned Steidl. The parties agreed on a method of payment, changed the price of one category of item, and set a closing date of September 17, 1986. A physical inventory was to be taken before that date to enable the parties to calculate the exact sale price. Keller was to have Paddington's attorneys prepare the closing documents, and the documents were in fact prepared, incorporating the terms in Keller's notes; however, Vess never received the documents, nor was the closing held. In early October, Keller called Schneeberger, who was in Dallas. According to Schneeberger, Keller told him that the deal was off and that Paddington was using Keller as the "fall guy" by saying that he had never had the authority to sell Steidl. Schneeberger then called Peter Thompson, president of Paddington. Thompson said that Keller had never had authority to sell Steidl and that Paddington was planning to sell Steidl to another company that had offered $500,000 more than Vess.

Vess filed suit against Paddington in the district court, seeking damages for repudiation of the oral agreement for the sale of Steidl. Paddington moved for summary judgment based on the Statute of Frauds, Mo.Ann.Stat. § 432.010 (Vernon 1952). Section 432.010 provides, in relevant part:

> No action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized....

The district court denied the motion. At trial, Paddington unsuccessfully moved for a directed verdict both at the close of Vess' case and at the end of all the evidence, relying in part on the Statute of Frauds. The district court also refused Paddington's request to instruct the jury on the

Statute of Frauds as a defense. The jury found for Vess and assessed damages of $500,000. Paddington moved for judgment notwithstanding the verdict and for a new trial, again partly on the basis of the Statute of Frauds. The motions were denied, and Paddington appealed.

The Eighth Circuit reversed and remanded, holding that the district court had erred in failing to consider whether the Statute of Frauds barred enforcement of the contract. *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208 (8th Cir.1989). It ruled that the Statute of Frauds applied to the contract because it could not be performed within one year, as Vess had promised Paddington royalties for the first two years after the sale. *Id.* at 212–13. The Eighth Circuit remanded the case to the district court to determine whether Keller's notes satisfied the Statute of Frauds.[2] The district court received briefs on the issue and scheduled a hearing for the presentation of additional evidence, but Vess elected to rely on the trial record. The district court held that the Statute of Frauds barred recovery because although the notes contained all the essential elements of the agreement, they were not signed by Paddington, the party to be charged. Accordingly, the district court entered judgment for Paddington. Vess appeals.

## II.

■■■ Under Missouri law, to satisfy the Statute of Frauds, a document must contain all the essential terms of the contract, *Kansas City Power & Light Co. v. Burlington N.R.R.*, 534 F.Supp. 1318, 1323 (W.D.Mo.1982), *aff'd*, 707 F.2d 1002 (8th Cir.1983), and must be signed by the party to be charged, *Dinuba Farmers' Union Packing Co. v. J.M. Anderson Grocer Co.*, 193 Mo.App. 236, 182 S.W. 1036, 1038 (1916). The contract itself need not be in writing; a memorandum of the contract is

sufficient. *See Weil Clothing Co. v. National Garment Co.*, 148 S.W.2d 586, 594 (Mo.App.1941) (quoting *Carter v. Western Tie & Timber Co.*, 170 S.W. 445, 446 (Mo. App.1914)). The memorandum need not be a single document but may comprise several writings that, in combination, supply the essential terms. *Bayless Bldg. Materials Co. v. Peerless Land Co.*, 509 S.W.2d 206, 211 (Mo.App.1974). Even if only one of the documents is signed, the requirement is satisfied as long as one document refers to the other, or their contents clearly show they are related. *See Mayer v. King Cola Mid–America, Inc.*, 660 S.W.2d 746, 748 (Mo.App.1983). Although the signature requirement may be met with initials, *Kamada v. RX Group Ltd.*, 639 S.W.2d 146, 148 (Mo.App.1982), they must be affixed with the intent to authenticate the writing as that of the signer, 2 E. Farnsworth, Farnsworth on Contracts § 6.8, at 144 (1990); Restatement (Second) of Contracts § 134 (1981). A signature may appear anywhere in the document and may be typed, printed, or stamped, as well as written. *Dinuba*, 182 S.W. at 1039.

■■■ The district court found that Keller's notes contained all the essential elements of the agreement between Vess and Paddington. The two sets of notes clearly are connected by virtue of their subject matter. Keller wrote his initials on the August 12 notes along with the initials of Welch and Schneeberger, the others who attended the meeting. It is undisputed that he did not sign or initial the September 4 notes. The district court held that the signature requirement was not met because Keller did not intend to authenticate the August 12 notes as his own when he wrote his initials; rather, he was recording who attended the meeting. The court relied on Keller's testimony that he did not sign the notes[3] and on Schneeberger's ad-

---

2. On remand, the district court was also directed to determine whether the agreement was for the sale of a business or of goods and hence which Statute of Frauds should apply, § 432.010 or the UCC Statute of Frauds, Mo.Rev.Stat. § 400.2–201. At the remand hearing, however, Paddington conceded the agreement was for the

sale of a business. For those who are interested in this topic, there is an illuminating discussion in *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178 (7th Cir.1991).

3. Q: Did Mr. Schneeberger ask you to sign any of these documents [the notes]?
A: No.

mission that the notes were not signed.[4] Whether Keller intended to authenticate his notes when he wrote his initials on them is a question of fact. *Vess Beverages,* 886 F.2d at 213; *Dinuba,* 182 S.W. at 1039. We therefore review the district court's determination under the "clearly erroneous" standard. It is also our responsibility to ensure that the district court applied the correct legal standard, and we review its rulings on state law de novo. *See Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

Vess correctly argues that the document need not be signed with intent to authenticate the *contract,* merely with intent to authenticate the writing. In other words, the signature need not be a legally effective assent to the contract, but the signer must sign with intent to indicate that the document is his. The district court failed to recognize this distinction; its opinion uses the two standards interchangeably. We agree with the district court, however, that initials written as part of an attendance list do not qualify even as authentication of the writing. If each participant had signed his own initials to signify that the notes were an accurate expression of the oral agreement, or if Keller alone had signed them to indicate that the notes were his, this would be a different case. Under the circumstances, however, to hold for Vess would mean that in future one who took notes at a meeting would risk a lawsuit for breach of contract if he or she happened to include an attendance list at

the top. We do not believe the Statute of Frauds permits such a result.

Vess argues that the mere fact that the notes are in Keller's handwriting counts as a signature. Vess cites no case or treatise that supports this proposition, nor have we been able to find any through independent research. Alternatively, Vess contends that because Keller admitted on the witness stand that the notes were his, the signature requirement is satisfied because the purpose of the signature is to authenticate the writing. With both these arguments, Vess confuses authentication for evidentiary purposes and authentication for purposes of the Statute of Frauds. Under Fed.R.Evid. 901, one must authenticate a document—i.e., show that it is what it purports to be—before introducing it into evidence. Authentication for Statute of Frauds purposes is a completely separate requirement that, by the terms of the statute, can be met only by a signature. Both Keller and Schneeberger testified that Keller did not sign the notes. If he had initialed them with intent to identify the notes as his or, as Schneeberger did, with intent to approve the terms of the agreement, the agreement would be enforceable.[5] Since he did not, we have no choice but to hold the agreement unenforceable. Therefore, we affirm the district court.

While we lament that application of the Statute of Frauds in this case leads to what seems to be an inequitable result, to do otherwise would be to effect the practical nullification of the Statute of Frauds. As a federal court sitting in diversity, we do not have the power to alter Missouri law.[6]

Q: Did you sign any of these documents?
A: No.
May 17 Tr. at 165.

**4.** Q: Where does Mr. Keller's signature [appear] on this Exhibit Number 3 [the August 12 notes], Mr. Schneeberger?
A: His writings [sic] there, not his signature.
May 16 Tr. at 156.

**5.** Lest there be any confusion, we emphasize that the standard is whether the party to be charged signed the writing with intent to authenticate *the writing.* Although one who signs a writing with intent to assent to its terms or to authenticate that an agreement exists fulfills the signature requirement in so doing, neither of

these latter two types of intent is necessary to satisfy the Statute of Frauds.

**6.** In addition, although this is not an issue presented to us on appeal, we are concerned that Keller's notes, the memorandum of the agreement, do not clearly show that an agreement was made. Only the facts that Keller wrote down a closing date and that Schneeberger ok'd most of the items in the September 4 notes indicate that the notes record a finished agreement rather than work in progress, and they only suggest such a conclusion. While we believe that an agreement was in fact reached in this case, to hold that the notes satisfy the Statute of Frauds might open the door in other

Paddington requests sanctions against Vess for filing a frivolous appeal. Fed.R.App.P. 38 allows a court of appeals to award damages and double costs to the appellee if the court determines that an appeal is frivolous. Paddington argues that Vess' appeal is merely an attempt to reargue the applicability of the Statute of Frauds, an issue that was resolved in our first opinion in this case. We disagree with Paddington's characterization of Vess' appeal. Vess is not arguing that the Statute of Frauds does not apply, but rather that its requirements were met. *See, e.g.,* Appellant's Brief at 9, 11. It is true that Vess' brief contains some argument that is not strictly relevant to the issues at hand. That is a problem we encounter frequently, unfortunately, but it does not call for sanctions. If sanctions were imposed every time briefs strayed from the question before the court, few litigants would escape.

A more important point is that Vess' appeal called to our attention the district court's misstatement of the legal standard governing the signature requirement of the Statute of Frauds. An appeal that points out an error of law cannot be frivolous. Paddington's request for sanctions is denied.

### III.

The district court correctly concluded that enforcement of the oral agreement between Vess and Paddington was barred by the Missouri Statute of Frauds because there was no signed memorandum of the agreement. Therefore, we affirm.

cases to fraudulent assertions that a contract had been reached where in fact only negotiations had taken place. *See Howard Constr. Co. v. Jeff-Cole Quarries, Inc.,* 669 S.W.2d 221, 227–28 (Mo.App.1983).

It should be noted that a court must consider whether there is a writing sufficient to satisfy the Statute of Frauds *before* it allows proof of the existence and terms of an oral contract. Therefore, testimony or circumstantial evidence that a contract was made, no matter how convincing, is simply irrelevant to whether the writing itself evidences an agreement. *See Howard Constr. Co.,* 669 S.W.2d at 229–30; *R.S. Bennett & Co. v. Economy Mechanical Indus., Inc.,* 606 F.2d 182, 186 n. 4 (7th Cir.1979). In other words, one cannot bootstrap a skimpy writing into an adequate one with oral evidence. *See Monetti,* 931 F.2d at 1181.