SIMPLEX SUPPLIES, INC., d/b/a
Simplex Construction Supplies,
Inc., Appellant,

v.

ABHE & SVOBODA, INC.,
et al., Respondents,

Rainbow, Inc., Respondent.

No. C1–98–866.

Court of Appeals of Minnesota.

Dec. 15, 1998.

Eric J. Magnuson, Jennifer A. Kraft, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, Jane Everson Volz, Volz Law Firm, Ltd., Lakeville, for appellant.

Peter C. Halls, Deborah J. MacKay, Faegre & Benson, L.L.P., Minneapolis, MN (for respondents Abhe & Svoboda, Inc., and Rainbow, Inc./Abhe & Svoboda, Inc., a joint venture).

Robb L. Olson, Meslow & Olson, PLLC, White Bear Lake, MN (for respondent Rainbow, Inc.).

Considered and decided by LANSING, P.J., and RANDALL and SHORT, JJ.

## OPINION

LANSING, Judge.

This is an appeal from an adverse summary judgment in an action alleging a contract to provide paint removal abrasive on a public construction project. We reverse the summary judgment dismissing the contract claim because, on the undisputed facts, the statute of frauds does not preclude consideration of whether an oral contract exists. We affirm the dismissal on the alternative claims for fraud and promissory estoppel because the claimant has failed to demonstrate the necessary element of reliance.

## FACTS

Abhe & Svoboda, Inc., and Rainbow, Inc. (joint venture), submitted a bid to the Minnesota Department of Transportation (department) to act as general contractor to sandblast, repair, and repaint the Blatnik Bridge. Simplex Supplies, Inc., a distributor of construction materials, offered to provide the joint venture with Blastox, an abrasive agent used to remove paint. Simplex is solely owned by Sarah Stehly and qualifies as a certified disadvantaged business enterprise according to the department. Before awarding a contract, the department requires the contractor submitting the lowest bid to document how it will meet the federal and state aid highway project requirement for 11-percent disadvantaged-business participation.

On April 27, 1995, Simplex faxed the joint venture a proposal to provide Blastox at $145 per ton. The proposal listed the project number and contained a handwritten contract amount of $362,500. The next day the department opened the bids and certified the joint venture as the lowest bidder. Stehly claims she met that same day with Michael DeBuhr, an industrial engineer for Rainbow, and that he agreed to Simplex's proposal. DeBuhr claims he did not form a contract, although he testified that the written materials used for the bid constituted an agreement to fulfill the disadvantaged-business goals of the project.

Within two weeks the joint venture submitted two documents to the department identifying Simplex as one of three disadvantaged-business subcontractors. Rainbow submitted a Description of Work and Field Monitoring Report. The Description of Work listed the project number, the $362,500 contract amount, and named Simplex as a subcontractor. Rainbow also submitted a notarized affidavit signed by its president, Charles Haagenson, stating Rainbow would subcontract work on the project to Simplex. The affidavit listed the project number, the $362,500 contract amount, and named Simplex as a subcontractor.

A short time later, Rainbow submitted to the department a Request to Sublet that listed the project number, the $362,500 contract amount, and named Simplex as a subcontractor. The Request to Sublet contains a signature block that states: "I hereby certify that the proposed subcontractor's contract is in my office and contains language which refers to all the requirements thereof." Under "Submitted By," Rainbow typed in its name and address. The department formally awarded the project to the joint venture based on EEO Contract Management Of-

fice's approval of the joint venture's disadvantaged-business participation.

After the department awarded the contract, Stehly contacted DeBuhr twice during 1995 to determine the project's schedule. She did not contact the joint venture during the winter of 1995–96 because cold weather had shut down the project. In March 1996, Stehly contacted Gail Svoboda, the president of Abhe & Svoboda. Abhe & Svoboda had assumed full responsibility for the joint venture in 1996. Svoboda told Stehly he was not aware of any contract between Simplex and the joint venture. Stehly contacted Rainbow, then sent Svoboda a letter on July 8, 1996, detailing the alleged breach of contract. In response, Svoboda denied that Rainbow had accepted Simplex's proposal or formed a contract with Simplex. Simplex brought this action and, following summary judgment dismissing its claims, brought this appeal.

### ISSUES

**I.** Does the statute of frauds prevent consideration of whether Simplex and the joint venture had an oral contract for the sale of goods?

**II.** Did the district court err in granting summary judgment on Simplex's claims for promissory estoppel and fraudulent misrepresentation?

### ANALYSIS

█ On appeal from summary judgment, this court examines whether there is any genuine issue of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When the facts are not in dispute, whether the statute of frauds has been satisfied is a question of law. *Starry Constr. Co. v. Murphy Oil USA, Inc.*, 785 F.Supp. 1356, 1361 (D.Minn.1992), *aff'd* 986 F.2d 503 (8th Cir.1993). This court reviews questions of law de novo. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989).

### I

█ The underlying purposes of the Uniform Commercial Code and statute of frauds on the sale of goods are to simplify the law governing commercial transactions and "to permit the continued expansion of commercial practices." Minn.Stat. § 336.1–102(2)(a), (b) (1996). The statute of frauds' purpose is evidentiary, to demonstrate the existence of a contract and prevent fraud. Restatement (Second) of Contracts § 131 cmt. c (1981); *see Joseph E. Seagram & Sons, Inc. v. Shaffer*, 310 F.2d 668, 673 (10th Cir.1962) ("The object of the statute of frauds is to prevent fraud and perjury in the enforcement of obligations * * * and [is] not for the purpose of promoting frauds or aiding an individual in the perpetration of a fraud." (citations omitted)). For the sale of goods exceeding $500, Minnesota's statute of frauds requires a signed writing sufficient to indicate that a contract has been made:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Minn.Stat. § 336.2–201(1) (1996).

█ It is important to distinguish the statute of frauds' writing requirement from the issue of whether a contract exists. The writing required by the statute "is not the contract, but only the written evidence of it." *Union Hay Co. v. Des Moines Flour & Feed Co.*, 159 Minn. 106, 109, 198 N.W. 312, 313 (1924) (citations omitted); *see* Henry D. Gabriel & Linda J. Rusch, *The ABCs of the UCC, Article 2: Sales* 20 (Amelia H. Boss, ed. 1997) ("Having a writing that satisfies § 2–201 does not prove a contract exists nor does it prove the terms of a contract."). Oral contracts are not prohibited or void, but a party may object to the enforcement of an oral contract on statute-of-frauds grounds. Minn.Stat. Ann. § 336.2–201 Uniform Commercial Code cmt. 1 (West.1966) ("All that is required is that the writing afford a basis

for believing that the offered oral evidence rests on a real transaction.").

Simplex does not assert that the joint venture created a contract with it by listing it as a proposed subcontractor. *Cf. Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693, 696 (Minn.1983) (merely listing a subcontractor as a proposed subcontractor does not create a contract). Instead, Simplex argues that it and the joint venture entered into an oral contract, which is indicated in the submitted documents, and that the documents satisfy the statute of frauds. The question here is (A) whether the four documents Simplex points to can be read together and, if so, (B) whether the documents include the required signature and quantity terms.

## A.

■ The statute of frauds on the sale of goods does not require one writing containing both a signature and a quantity; several documents may be read together to satisfy the statute.

> Several papers may be taken together to make up the memorandum, providing they refer to one another, or are so connected together, by reference or by internal evidence, that parol testimony is not necessary to establish their connection with the contract.

*Olson v. Sharpless*, 53 Minn. 91, 94, 55 N.W. 125, 126 (1893); *see Union Hay*, 159 Minn. at 109, 198 N.W. at 313 (same).

Simplex argues that four documents— Simplex's faxed proposal; the Description of Work; Haagenson's affidavit; and the Request to Sublet—satisfied the writing requirement.[1] The documents were all generated within a six-week period, and each contains the department's project number and the $362,500 contract amount, which implicitly binds the documents together. *See id.* at 109–10, 198 N.W. at 313 (memo-

randum and letters discussing delivery read together satisfied the statute of frauds); *Olson*, 53 Minn. at 94, 55 N.W. at 125 (order, letters, and telegram read together satisfied the statute of frauds). *Cf. W.H. Barber Co. v. McNamara–Vivant Contracting Co.*, 293 N.W.2d 351, 355 (Minn.1979) (a series of invoices and price quotation letters did not satisfy the writing requirement because they did not indicate an underlying agreement); *Quinn–Shepardson Co. v. Triumph Farmers' Elevator Co.*, 149 Minn. 24, 26, 182 N.W. 710, 711 (1921) (no internal evidence or reference connected letter and three memoranda). Because the timing, the department's project number, and the $362,500 contract amount implicitly bind the documents together and because the documents indicate the existence of an underlying oral contract, we turn next to whether they contain the required signature and quantity terms.

## B.

■ For writings to be effective against a party, the statute of frauds on the sale of goods requires that at least one writing contain the signature of the party to be charged. The signature can be found on any document and may consist of "any symbol executed or adopted by a party with present intention to authenticate a writing." Minn. Stat. § 336.1–201(39) (1996); *see* Minn.Stat. Ann. § 336.2–201 Uniform Commercial Code cmt. 1 (a signature includes "any authentication which identifies the party to be charged"); *Quinn–Shepardson*, 149 Minn. at 26, 182 N.W. at 711 ("writing must indicate that the signature was affixed for the purpose of becoming charged with the obligations of a contract"); *see also Migerobe, Inc. v. Certina USA, Inc.*, 924 F.2d 1330, 1333 (5th Cir.1991) ("signed writing need not refer explicitly to the unsigned writing," reference can be implicit). In this case, both

---

1. We disagree with the dissent's position that the "combination of documents" argument was raised for the first time on appeal. Simplex's written trial memorandum for the district court addresses whether the four documents satisfy the statute of frauds; the joint venture's written trial memorandum argues that Simplex may not "cobble together a number of documents" in

order to satisfy the statute, and at the oral argument on its summary judgment motion the joint venture specifically disputed that the documents could be read individually *or in combination* to satisfy the statute. The district court's findings also state Simplex "argues there are four writings in the record that satisfy the statute of frauds."

Haagenson's affidavit and the Request to Sublet contain the signatures of the party to be charged. In his affidavit, Haagenson stated Rainbow would "sub-contract the following work" to Simplex. This statement and Haagenson's notarized signature indicate an intent to be charged with the obligations of contract and authenticates the writing. *See Quinn–Shepardson,* 149 Minn. at 25, 182 N.W. at 711 ("The signature of the party to be charged need not be upon the memorandum of sale; it may be on a separate writing." (citation omitted)).

Similarly, the Request to Sublet listed Simplex as the "Proposed First Tier Subcontractor." Together with Rainbow's typewritten signature, this also indicates an intent to be obligated and authenticates the writing. *See Vess Beverages, Inc. v. Paddington Corp.,* 941 F.2d 651, 654 (8th Cir.1991) (statute of frauds satisfied by a typed signature); *Department of Banking & Finance v. Wilken,* 217 Neb. 796, 352 N.W.2d 145, 148 (Neb. 1984) (a typed name placed on a document with intent to authenticate fulfills statute of frauds signature requirement); *Landeker v. Co-operative Bldg. Bank,* 71 Misc. 517, 130 N.Y.S. 780, 781 (N.Y.Sup.Ct.1911) (a signature "stamped on by the letters of a typewriter" may satisfy the statute of frauds signature requirement). A signature indicating an intent to contract satisfies the statute of frauds' signature requirement. *Vess Beverages,* 941 F.2d at 655 ("the signature need not be a legally effective assent to the contract, but the signer must sign with intent to indicate that the document is his"). Haagenson's signature on his affidavit and Rainbow's typewritten signature on the Request to Sublet both satisfy the signature requirement.

■ In addition to a signature, at least one writing must contain the quantity to be charged against the party. The quantity may be derived from a dollar amount provided in the documents. *See Oskey Gasoline & Oil Co. v. Continental Oil Co.,* 534 F.2d 1281, 1283 (8th Cir.1976). In *Oskey,* the court arrived at the quantity figure by taking a credit line dollar amount, dividing it by the average price per gallon, and then multiplying the number by the number of billing periods in a year. *Id.* n. 5.

■ In this case all four documents listed the $362,500 contract amount. Simplex's faxed proposal offered the joint venture Blastox at the price of $145 per ton. Dividing the $362,500 contract amount by $145 per ton results in a quantity of 2,500 tons. *See id.* (dividing credit line to establish quantity); *see also Upsher–Smith Labs., Inc. v. Mylan Labs., Inc.,* 944 F.Supp. 1411, 1427 (D.Minn. 1996) (writings indicated parties intended a requirements contract and stating, "Justice would be thwarted by denying enforceability upon the basis of a lack of a specific quantity[,][as][t]he code was enacted to prevent just such an inequitable result.") (quoting *O.N. Jonas Co. v. Badische Corp.,* 706 F.2d 1161, 1165 (11th Cir.1983)). Although the statute of frauds on the sale of goods does not require that a writing contain a price or dollar amount, we believe a writing that contains a price or dollar amount satisfies the quantity requirement. Minn.Stat. Ann. § 336.2–201 Uniform Commercial Code cmt. 1 ("Of course if the 'price' consists of goods rather than money the quantity of goods must be stated.").

■ We note that Simplex's complaint alleges the joint venture agreed to purchase 5,500 tons of Blastox. This does not comport with the 2,500 tons based on the $362,500 contract amount and the price per ton in Simplex's faxed proposal. But a quantity term need not be accurate to satisfy the statute of frauds; the plaintiff's recovery is simply limited to the quantity in the writing. Minn.Stat. Ann. § 336.2–201 Uniform Commercial Code cmt. 1; *Upsher–Smith Labs.,* 944 F.Supp. at 1426; *W.H. Barber,* 293 N.W.2d at 356; *see also* Caroline N. Brown, *Corbin on Contracts* § 21.2 at 664 n. 27 (rev. ed.1997) (noting likely deletion of any quantity term in future drafts of Article 2).

Read together, the four documents satisfy the statute of frauds requirements relating to the sale of goods. Thus, we reverse the district court and remand for a determination on the disputed fact issue of whether an oral contract existed between Simplex and the joint venture. *See UFE Inc. v. Methode Elect., Inc.,* 808 F.Supp. 1407, 1412 (D.Minn. 1992) (if writing satisfies statute of frauds,

plaintiff may proceed on issue of whether there is a contract) (citing *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 538 N.Y.S.2d 503, 535 N.E.2d 633, 637–38 (N.Y. 1989)). Because we find that the documents satisfy the statute of frauds' writing requirement, we do not address Simplex's alternative arguments under the merchants and admissions exceptions to the statute of frauds.

## II

Simplex also appeals the district court's order granting summary judgment on its claims of promissory estoppel and fraudulent misrepresentation.

■■■ Promissory estoppel requires a plaintiff to demonstrate reliance on a promise and that the promise must then be enforced to avoid injustice. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995); *Brenner v. Nordby*, 306 N.W.2d 126, 127 (Minn.1981). The district court found no evidence in the record that Simplex had purchased any production equipment or relied in any other manner on the joint venture's alleged promise. Our review of the record confirms the district court's determination.

At best, the record indicates that Construction Technology, Inc., a firm to which Simplex subcontracted the production of Blastox, relied on the order from Simplex. Construction Technology, Inc., however, is not a party to this action, and Simplex has not shown its own reliance on the alleged agreement with the joint venture. *See Ruud*, 526 N.W.2d at 372 n. 4 (not reaching the application of promissory estoppel to third parties). Simplex asserts promissory estoppel in general and reliance in particular are generally questions of fact for the jury. *Brenner*, 306 N.W.2d at 127; *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.*, 481 N.W.2d 875, 880 (Minn.App.1992), *review denied* (Minn. May 15, 1992). *Cf. Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 846–47 (Minn.1995) (affirming summary judgment because reliance was unreasonable as a matter of law). But the issue in the cases cited by Simplex is not evidence of reliance but whether reliance was reasonable. *See Brenner*, 306 N.W.2d at 127 (reasonableness of plaintiff's reliance is a question of

fact); *Norwest Bank*, 481 N.W.2d at 880 ("[t]he reasonableness of a party's reliance is [generally] a fact question for the jury"). Because Simplex failed to demonstrate reliance, we affirm the district court's summary judgment on the promissory estoppel claim.

■■■ Similarly, Simplex's fraudulent misrepresentation claim also fails because Simplex has not demonstrated that it relied on the alleged contract with the joint venture. To establish a fraudulent misrepresentation, a plaintiff must show reliance on a representation that resulted in damage to the plaintiff. *Davis v. Re–Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). As with promissory estoppel, Simplex has not demonstrated its own reliance on any promises the joint venture may have made. *See Gaertner v. Rees*, 259 Minn. 299, 305, 107 N.W.2d 365, 369 (1961) (affirming grant of summary judgment on fraudulent misrepresentation when the plaintiff failed to demonstrate reliance). Because Simplex has not shown reliance, we affirm the district court's summary judgment on the fraud claim.

## DECISION

The four documents Simplex submitted satisfy the writing requirement of the statute of frauds provision contained in Minn.Stat. § 336.2–201. We therefore reverse the district court's order that granted summary judgment to the joint venture and remand for a determination on the disputed contract issue. Simplex has failed to show that it relied on the alleged contract or any promise made by the joint venture, and we affirm the district court's order granting the joint venture summary judgment on Simplex's promissory estoppel and fraudulent misrepresentation claims.

Affirmed in part, reversed and remanded in part.

SHORT, Judge (concurring in part, dissenting in part).

I concur insofar as the majority concludes Simplex's promissory estoppel and fraudulent misrepresentation claims fail as a matter of law because there is no evidence Simplex relied on any representations or purchased

**804**

any production equipment. I respectfully dissent because there is no writing sufficient to indicate the parties entered into a contract for the sale of a generic product. *See* Minn. Stat. § 336.2–201(1) (1996) (requiring contract for sale of goods priced at $500 or greater to be evidenced through writing). First, a general contractor's listing of a particular subcontractor in its winning bid does not form a binding contract between a general contractor and a subcontractor. *Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330 N.W.2d 693, 695 (Minn.1983).

Second, Simplex's "combination of documents" theory was raised for the first time on appeal. Thus, this new legal argument is not properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating reviewing court will not consider matters not argued or considered in court below).

And third, assuming the "combination" theory was properly raised, those four documents fail to satisfy the statute of frauds because they: (a) indicate a future, not existing, contract; (b) do not refer to or incorporate each other; and (c) contain contradictory terms. *See* Minn.Stat. § 336.2–201(1) (1996) (requiring writing to contain quantity term and be signed by person against whom enforcement is sought); *Holmes v. Torguson*, 41 F.3d 1251, 1255 (8th Cir.1994) (finding no evidence of contract where documents were written at different times and under different circumstances and do not purport to be part of single contract); *Quinn–Shepardson Co. v. Triumph Farmers Elevator Co.*, 149 Minn. 24, 26, 182 N.W. 710, 711 (1921) (holding writing must indicate party intended to be charged with obligations of contract).

The statute of frauds bars Simplex's contract claim as a matter of law. Under these circumstances, I would affirm the trial court's grant of summary judgment in favor of Abhe & Svoboda.